### CORBETT v. VETTE et al.

(Circuit Court of Appeals, Ninth Circuit. January 4, 1926.)

No. 4618.

Mortgages ⬳256—Assignee of mortgage given on condition held not in position to enforce foreclosure.

Where mortgagee agreed that mortgage was to become effective only if sale was not consummated, and took an assignment of deposit of purchase price, assignee, who knew facts, and aided in perfecting title, could not, on failure of bank holding deposit, foreclose mortgage on theory that sale contract was made by agent without written authority and without joinder by vendor's wife, contrary to Comp. St. Idaho 1919, §§ 4666 and 7976.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Mortgage foreclosure suit by Henry L. Corbett against Henry Vette and others. Decree for defendant named, and plaintiff appeals. Affirmed.

This is a suit by Corbett against Servel and wife, Vette and wife, and others, including the First National Bank of Burley, Idaho, to foreclose a mortgage. The facts are: In August, 1919, Servel, by and through Warren, his agent and attorney in fact, made a written contract with Henry Vette, appellee herein, whereby Servel agreed to sell to Vette, and Vette agreed to buy, certain real property in Idaho. Vette agreed to pay $21,000 for the property, in cash, "to be deposited in the First National Bank of Burley, Idaho, on or before September 1, 1919." Warren was president of the bank. Servel agreed to deliver to Vette possession by January 1, 1920, and to convey to him by warranty deed the fee-simple title, free of all incumbrances, except taxes and water charges, maintenance and construction charges, for 1920 and thereafter; "said deed to be delivered" as soon as the sheriff of Cassia county, Idaho, might be able to execute and deliver to Servel or to Vette, as assignee of Servel, sheriff's deed based upon the outstanding certificate of sale by the sheriff theretofore issued to Servel's predecessor in interest. In case the property should be redeemed from the foreclosure sale, incident to which the certificate of sale was issued, then Servel was to repay to Vette the sum by him deposited in the bank, together with interest thereon from the date of its deposit.

Before September 1, 1919, Vette paid the $21,000 to the First National Bank of Burley, and the bank retained the money to the credit of Vette and Servel. About January, 1920, Vette took possession of the premises, has made improvements, and has held possession ever since.

On November 20, 1919, Servel and wife mortgaged the property to one Healy to secure the payment of $21,000, and as part of the transaction Servel executed an assignment of the $21,000 paid by Vette to the bank of Burley. At that time it was understood that the mortgage was only intended to take effect in case the sale to Vette was not consummated. In July, 1920, the sheriff's deed was issued for the real estate involved. About August 7, 1920, an abstract of title to the real estate was presented by an agent of Healy to one Lowe, attorney for Vette. Lowe examined the abstract, and objected to the title as shown therein. Healy then moved to remove the objections to the abstract, and thereafter, in March, 1921, assigned to the appellant, Corbett, the $21,000 which had been paid by Vette to the bank of Burley and the mortgage that had been executed by Servel and wife to him, Healy. In the agreement between Healy and Corbett the agreement between Vette and Servel is referred to as also assigned to secure the payment of Servel's note to Healy, and it was recited that the purpose of the assignment of the $21,000 by Servel to Healy was that that sum should be paid to Healy "if the sale between Xavier Servel to Henry Vette was consummated, and that said mortgage securing the same should then be released; that if the said sales * * * were not consummated, said mortgage should become a lien against the real estate described in said mortgage." Thereafter, about August 24, 1921, Lowe, attorney for Vette, wrote to Healy at Ogden, Utah, demanding that within 10 days from the date of the letter deed be made and delivered as specified in the contract between Servel and Vette, together with repayment of operation and other charges for the year 1919, paid by Vette, and which, under the provisions of the contract, should have been paid by Servel. The letter stated that, if the deed was not delivered, Vette would demand from the bank of Burley the sum of $21,000 which Vette had paid, together with interest. The following day, August 25, 1921, Healy wrote to the attorney for Vette that he had transferred his interest in the contract to a wool warehouse company of Portland, Or., and suggested that the attorney for Vette communicate with one Bowerman of Portland, care of the Wool Warehouse Company. Two days thereafter Bowerman telegraphed to Mr. Bissell, attorney at Gooding, Idaho, that Mr. Lowe had served notice on behalf of Vette that, unless the Servel deed was delivered within 10 days from August 24th, he would demand a return of his money in damages. The telegram continued: "This is a matter recently referred to you on behalf of Mr. Corbett, who has purchased the interest of Ogden Bank and is entitled to the money on deposit at Burley. Will you please do what is necessary to protect Corbett and prevent deal falling through." Mr. Bissell, attorney for Corbett, at once went to Burley, learned that the money paid by Vette under the contract with Servel was on deposit, and, upon conferring with Mr. Lowe, attorney for Vette, obtained additional time in which to perfect title to the real estate, and proceeded in his efforts to make a clear title.

It appears that, between the time of the examination of the abstract for Vette and the conversations between attorneys Bissell and Lowe at Burley, suits had been brought in the state courts of Idaho against Servel and others, and attachments were levied on the real estate. Thereafter Corbett filed complaints in intervention in the actions in the state court, setting up the contract between Vette and Servel, the mortgage to Healy, and the agreement with Healy and himself, and pleading that all that there was to clear the title and comply with the terms and conditions of the contract was to procure a release of the attachments levied. After the intervention had been filed, Bissell and Lowe conferred, agreeing that Vette should pay the taxes and maintenance charges on the land as provided in the contract, and that Corbett should pay the taxes and maintenance charges required to be paid by Servel under the terms of the contract. Accordingly, Vette paid the taxes and charges for 1920–1921, but Corbett failed to pay the taxes for 1919 in accordance with the agreement, and thereafter, on December 26, 1922, in order to prevent the issuance of a tax deed, Vette paid the taxes for 1919.

On November 21, 1921, and before Corbett had perfected the abstract of title to the realty, or had delivered to Vette a deed, the bank of Burley suspended payment, having the $21,000 paid to it by Vette in its possession. Thereafter Corbett filed for record all instruments necessary to remove all the objections made to the title to the real estate at the time the abstract was examined for Vette, except the satisfaction of a judgment which had been obtained by the bank against one Wright. Corbett, without tendering or submitting to Vette or his attorney an abstract of title brought down to the time and showing the necessary releases or tendering a deed to Vette, commenced this suit to foreclose the mortgage which had been made and delivered to Healy by Servel and his wife. Vette and wife appeared, and pleaded that the mortgage to Healy was executed and intended to take effect only in the event that the sale of real estate to Vette was not consummated, set up the contract, and alleged that the deposit of the money in the Burley bank was a compliance on his part with the terms of the contract. By cross-complaint Vette pleaded the contract with Servel, knowledge on the part of Healy of the contract, and the contract between Healy and Corbett, and asked that the premises be conveyed to him.

The court heard evidence, and entered decree annulling the mortgage and quieting title to the premises in Vette.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for appellant.

S. T. Lowe, of Burley, Idaho, for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). Appellant urges that the Servel-Vette contract was void because Warren was not authorized in writing to execute the contract for Servel, and because the contract was not signed by Servel's wife. Section 7976, Idaho Statutes, provides that an agreement for sale of real property, if made by an agent of the party sought to be charged, is invalid, unless authority of the agent is in writing subscribed by the principal. Section 4666, Idaho Statutes, gives the husband the management and control of community property except in matters not here material, but provides that he cannot sell, convey, or incumber the community real estate, unless the wife join in execution of the instrument by which the real estate is sold, conveyed, or incumbered. In our opinion, however, whether the contract was originally of no effect because not made in compliance with section 7976, or was for the sale of community property, is of little importance, for the reason that Servel ratified and approved it, and it was performed by Vette. When Healy took the mortgage from Servel and wife and the assignment of the $21,000, he knew of the existence of the Servel-Vette contract, and agreed that his mortgage was to become effective only in case the contract between Servel and Vette was not consummated. With such knowledge he adopted the contract and entered upon performance of its conditions, obtained an abstract of title which he presented to an attorney for Vette, and thereafter proceeded to clear the title. Thereafter Corbett, with full knowledge, accepted assignment of the $21,000 in the bank, and approved the terms and conditions under which the mortgage was executed. Afterwards, when Vette demanded performance, and wrote that, if it could not be had, he would demand return of the $21,000 in the bank, it was Corbett who asked further time to comply with the terms of the agreement, and it was he who intervened in the actions pending in the state

court, and later agreed with Vette to pay certain taxes upon the property which should have been paid by Servel. These acts were a ratification of the contract and agreement, and he ought not to be heard to question the validity of them now. 21 C. J. 1216. However, he failed to perform. Several objections that had been made to the title when Lowe examined the abstract were not overcome until November 21, 1921, which was the day that the bank of Burley closed its doors. No deed was tendered, and this suit in foreclosure was filed thereafter.

The agreements between Servel and Healy and between Healy and Corbett ought not to affect Vette's rights under the contract. It is to be kept in mind always that Servel and wife have never objected to fulfilling the agreement. Corbett, who took the assignment and acted as has been shown, adopted the agreement, and cannot now foreclose the mortgage.

The objections interposed to the decree awarding specific performance to Vette under his cross-bill must be overruled. Servel and wife are not opposed to a decree awarding such relief to Vette, and Vette, having paid $21,000 into the bank, and having gone into possession with the consent of Servel, and having remained in possession and paid taxes and other charges, should be given relief by specific performance. Corbett has no interest in the land, and is not in a position to complain of such a decree.

We think the equities are with the appellees, and that the decree was just.

Affirmed.