Paul F. MYERS, et al., Appellants,

v.

PLAN TAKOMA, INC., et al., Appellees.

No. 83–251.

District of Columbia Court of Appeals.

Submitted Oct. 26, 1983.

Decided Dec. 19, 1983.

Benjamin B. Brown, Rockville, Md., for appellants.

Scott B. Schreiber and Boris Feldman, Washington, D.C., for appellees.

Before KERN, MACK and TERRY, Associate Judges.

PER CURIAM:

Appellants Poling, Myers and Miller brought a libel action in the trial court against a neighborhood association called Plan Takoma, Inc. (Association) and others asserting that a statement made in a leaflet distributed by the Association (in its effort to block the issuance of a liquor license to appellants to establish a bar in the neighborhood) was untruthful.[1] The Association and the other appellees [2] filed a motion to dismiss the complaint on the grounds that the statement is protected by the First Amendment right to petition, that the statement is not capable of a defamatory meaning, that the statement is a constitutionally protected statement of opinion and that the complaint failed to allege that the statement was "of and concerning" appellants. (Record at 7.) After oral argument, the trial court issued a memorandum opinion and order dismissing the complaint for failure to state a claim upon which relief can be granted.

We are persuaded by Judge Weisberg's comprehensive and well-reasoned memorandum opinion, which we adopt and attach

1. The statement appeared as the first sentence in the leaflet: "A shady group of bar owners who operate a number of topless/bottomless 'Go-Go' dancer bars in D.C., which are the hangouts of motorcycle gangs and toughs, have taken over the lease to the Lucky Lady Lounge and reopened it as THE WHISTLE STOP." Appellants alleged that this statement is defamatory because the term " 'shady' ... implies that the said individuals are of doubtful hones-ty and should be held up to public ridicule...." (Record at 3.)

2. The other appellees were the individual officers of Plan Takoma, Inc. and Neighbors, Inc., local nonprofit community organizations; and, an elected Advisory Neighborhood Commissioner.

hereto as an Appendix, that the complaint was properly dismissed.[3]

*Affirmed.*

APPENDIX

SUPERIOR COURT OF THE

DISTRICT OF COLUMBIA

Civil Division

Civil Action No. 3758–82

PAUL F. MYERS, et al., PLAINTIFFS

v.

PLAN TAKOMA, INC., et al., DEFENDANTS

MEMORANDUM AND ORDER

Plaintiffs bring this action for libel based on an allegedly defamatory statement made in the attached leaflet, which was published by defendants for the purpose of arousing community sentiment against plaintiffs' application for an ABC license for a neighborhood bar. Plaintiffs have alleged that the description of them in the leaflet as "a shady group of bar owners" implied dishonesty and illicit activity and, as such, constituted an actionable defamatory statement. Defendants have moved to dismiss the complaint for failure to state a claim on the grounds that: (1) the statement was made in the context of a petition to the government on an issue of public importance, and therefore that it was absolutely privileged under the First Amendment; (2) the statement is not capable of a defamatory meaning and, if it were, is nonetheless constitutionally protected as a mere statement of opinion; (3) the statement did not name the plaintiffs or identify them in such a way as to be "of and concerning" plaintiffs for purposes of an action for libel.

■ It is not disputed that the allegedly defamatory statement was published in the leaflet as part of an effort to influence the Alcohol Beverage Control Board to deny plaintiffs an ABC license to operate a bar/restaurant in defendants' neighborhood. Defendants contend, based on an impressive array of case support, that statements published in the exercise of a citizen's fundamental right to petition government, even if otherwise defamatory, are absolutely privileged under the First Amendment and can not be the basis of an action for libel. But the court need not go so far as to recognize an absolute privilege in this case.[1] Based on the submissions of

---

**3.** We note that the recent decision of the United States Court of Appeals for the District of Columbia Circuit in *Ollman v. Evans,* 713 F.2d 838 (D.C.Cir.1983), reversing and remanding for further factfinding the federal district court decision cited in Judge Weisberg's opinion does not undermine his conclusion or preclude our adoption of it. In the present case, the alleged libelous statement is clearly an expression of opinion based on a full disclosure of facts in the leaflet, and thus deserving of constitutional protection. We need not be concerned, as the majority of the federal appeals court was in *Ollman,* with the issue whether the publishers of the statements alleged there to be libelous, presented to the federal trial court sufficient and accurate background facts to support their opinions.

**1.** For their position that such statements are absolutely privileged, defendants cite a number of Supreme Court decisions and decisions of state and federal appellate courts. Only one of them—*Webb v. Fury,* 282 S.E.2d 28 (W.Va. 1981)—holds that the cloak of the First Amendment surrounding the exercise of one's right to petition government protects against an action for defamation that would otherwise lie. The others, flowing generally from the so-called *Noerr-Pennington* doctrine, all deal with immunity from other kinds of civil liability, most of them suits involving alleged anti-trust violations. In other areas of important constitutionally or federally protected activity such as collective bargaining and "freedom of the press," the Supreme Court has recognized only a *qualified* privilege, requiring a plaintiff in a defamation suit to show by clear and convincing evidence that the statement was false and defamatory and that it was made "with 'actual malice' —that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280 [84 S.Ct. 710, 726, 11 L.Ed.2d 686] (1964). *See, e.g., Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264 [94 S.Ct. 2770, 41 L.Ed.2d 745] (1974); *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53 [86 S.Ct. 657, 15 L.Ed.2d 582] (1966); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 [94 S.Ct. 2997, 41 L.Ed.2d 789] (1974); *Rosenbloom v. Metromedia, Inc.,*

the parties and the arguments of counsel at the hearing on defendants' motion to dismiss, the court concludes that plaintiffs have failed to state a claim for libel on which relief may be granted because the allegedly defamatory statement is a constitutionally protected statement of opinion.[2]

Expressions of opinion are entitled to constitutional protection unless they imply the existence of undisclosed defamatory facts as the basis of the opinion. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40 [94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789] (1974). *See also* Restatement (Second) of Torts § 566 (1977).

In deciding whether the challenged statement is entitled to the constitutional protection covering opinions, the court must determine whether the statement is one of fact or one of opinion. Some statements are obviously on one side of the line or the other, but it is not always a simple matter to distinguish actionable statements of fact from constitutionally protected statements of opinion. The test requires the court to examine the allegedly defamatory words in the context of the entire document in which they appear. Even where it appears that the words, in context, are merely a statement of opinion, the court must also determine whether the opinion could be said to imply undisclosed defamatory facts. In addition, the court must consider whether the allegedly defamatory words are susceptible to proof of their truth or falsity. Statements that can not readily be proven true or false are, of course, more likely to be viewed as statements of opinion, not fact. Finally, the court must consider the context in which the document containing the allegedly defamatory reference is published. Absolute privilege aside, in the course of legitimate debate over issues of public importance, offensive rhetoric on the borderline between fact and opinion is to be expected, and such statements are much more deserving of constitutional protection than similar statements made for purely private motives. *Information Control Corp. v. Genesis One Computer Corp., supra,* 611 F.2d at 784; *Buckley v. Littell,* 339 [539] F.2d 882, 894 (2d Cir.1976); *cert. denied,* 429 U.S. 1062 [97 S.Ct. 786, 50 L.Ed.2d 777] (1977); *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 397 N.Y.

---

403 U.S. 29 [91 S.Ct. 1811, 29 L.Ed.2d 296] (1971); *cf. Nader v. de Toledano,* 408 A.2d 31 (D.C.1979), *cert. denied,* 444 U.S. 1078 [100 S.Ct. 1028, 62 L.Ed.2d 761] (1980). In *Webb v. Fury, supra,* the Supreme Court of West Virginia expressly rejected the qualified privilege/actual malice standard when it held that false defamatory statements, even if knowingly false, are absolutely privileged if published as part of a petition to a governmental body. *See also Sierra Club, et al. v. Butz,* 349 F.Supp. 934 (N.D.Cal.1972).

2. It is clear, contrary to plaintiffs' position, that the question of whether an allegedly defamatory statement is protected by the First Amendment, either because it appears in the context of a petition to the government on an issue of public importance or because it is a mere statement of opinion, is a question of law to be decided by the court in the first instance. *See Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 13 [90 S.Ct. 1537, 1541, 26 L.Ed.2d 6] (1970); *Information Control Corp. v.*

*Genesis One Computer Corp.,* 611 F.2d 781, 783 (9th Cir.1980). In ruling on this motion, the court has considered only the pleadings and the leaflet containing the allegedly defamatory statement. Plaintiffs apparently intended to attach the leaflet to the complaint and to incorporate it by reference (Complaint ¶ 6), but through inadvertence the leaflet was not in fact attached to the original of the complaint in the court jacket. Defendants also attached a copy of the leaflet to their motion to dismiss. Under Sup.Ct.Civ.R. 12(b), consideration of the leaflet may have the effect of converting the motion to dismiss into a motion for summary judgment. *See, e.g., Kutz v. The Independent Publishing Co., Inc., et al.,* 97 N.M. 243, 244, 638 P.2d 1088, 1089 (N.M.Ct.App.1981). Neither party has asked that the motion be treated as a motion for summary judgment, and neither side submitted affidavits or statements of material facts. In any event, the result in this case is the same whether one analyzes the problem under Rule 12 or Rule 56.

S.2d 943, 950, 42 N.Y.2d 369, 376, 366 N.E.2d 1299, 1306 (1977).

Applying the criteria enumerated above to the facts of the case at bar, the court must look first to the allegedly defamatory statement as it appears in the leaflet. The only portion of the leaflet alleged to be defamatory is the opening phrase, "a shady group of bar owners." While it may be true that this offensive epithet in another context might connote some degree of dishonesty, in the context in which it appeared it is highly unlikely that any reader would have taken it as anything other than "rhetorical hyperbole." *See Greenbelt Cooperative Publishing Ass'n v. Bresler, supra,* 398 U.S. at 13–14 [90 S.Ct. at 1541]. Moreover, whatever definition or interpretation might be ascribed to the word "shady" in other contexts, here it was immediately followed by a description of other drinking establishments in which the bar owners, or some of them, were said to have an interest, and that juxtaposition served to define what the authors of the leaflet meant by their use of the term. Taken in context, then, it seems rather clear that the authors of the leaflet were intending simply to state their opinion of plaintiffs' character based on plaintiffs' other business associations.

Even as a statement of opinion, defendants' use of the term "shady" is entitled to constitutional protection only if, in context, it does not imply the existence of undisclosed defamatory facts. *See Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 339 [94 S.Ct. at 3006]; *Ollman v. Evans,* 479 F.Supp. 292 (D.D.C.1979);[3] Restatement (Second) of Torts § 566 (1977). Here, however, the facts on which the opinion "shady" was based were fully disclosed in the leaflet. There is no suggestion in the leaflet that the authors relied on any privately-held information outside of what was stated

in the publication to substantiate the comments made about the plaintiffs therein. *Cf. Kutz v. The Independent Publishing Co., Inc.,* 97 N.M. 243, 246, 638 P.2d 1088, 1091 (N.M.Ct.App.1981). Whether or not the stated facts demonstrated that the bar owners were in fact "shady"—that is to say, whether or not the opinion was justified by the stated facts—the facts on which the opinion was based were neither undisclosed nor themselves defamatory.

■ The second step in the court's analysis of whether the statement is opinion or fact is to determine if the word "shady" can readily be proven true or false. If the content of the terms used "is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity," the use of the terms will ordinarily be held to be within the realm of protected opinion. *Buckley v. Littell, supra,* 539 F.2d at 894; *see also Ollman v. Evans, supra,* 479 F.Supp. at 294. Here, the term "shady" is not readily susceptible to proof of its truth or falsity. It is not a word laden with factual content, such as a charge of serious criminal conduct. *Compare Cianci v. New Times Pub. Co.,* 639 F.2d 54, 63 (2d Cir.1980) (accusation of rape and obstruction of justice held to be actionable) *with Marchiondo v. New Mexico State Tribune Co.,* [98] N.M. [282], 648 P.2d 321, 331 (N.M.Ct.App.1981) (accusation of cronyism held not to be actionable). It is an expression of the author's opinion of plaintiffs' reputation, and it would be, to say the least, difficult to prove or disprove.

■ Finally, the court must consider the context in which the leaflet was published. "Erroneous opinions are inevitably put forward in free debate but even the erroneous opinion must be protected so that debate on public issues may remain robust and unfettered and concerned individuals may have the necessary freedom to speak their conscience. * * * 'Any risk that full and

---

**3.** In *Ollman v. Evans, supra,* 479 F.Supp. at 293, the court addressed this question of mixed fact and opinion in the following terms:

The First Amendment requires indefeasible protection of opinion to facilitate the free flow of ideas. Opinion *qua* opinion cannot

provide the basis for an actionable claim. A cause of action will accrue, however, if a statement implies the existence of undisclosed "facts" which are both false and defamatory.

vigorous exposition and expression of opinion on matters of public interest may be stifled must be given great weight. In areas of doubt and conflicting considerations, it is thought better to err on the side of free speech.' " *Rinaldi v. Holt, Rinehart & Winston, Inc., supra* [397 N.Y.S.2d at 950], 366 N.E.2d at 1306, 1308 (quoting in part from Judge Lumbard's opinion in *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 ( [2nd Cir.]1977)). Here the leaflet containing the offensive reference to plaintiffs was published as part of a campaign to influence the District of Columbia Alcohol and Beverage Control Board to deny an ABC license for plaintiffs to operate a drinking establishment in defendants' neighborhood. The public undoubtedly has a strong interest in open and vigorous debate over issues such as these, and a blow that might be considered below the belt if struck solely to damage the reputation or standing of the target for some purely private motive may well be tolerable in the context of legitimate debate between opposing sides over an issue of public importance.

The Supreme Court of California, sitting en banc, recently decided a case on facts quite similar to those presented here. In *Okun v. Superior Court,* 29 Cal.3d 442, 175 Cal.Rptr. 157, 629 P.2d 1369 (1981), a group of concerned citizens organized a successful campaign to repeal a city ordinance that would have permitted condominium development of a choice ten acre site in Beverly Hills. In the course of their lobbying effort, they wrote letters and made statements accusing the real estate developer, directly and by innuendo, of a corrupt relationship with city officials to "buy" the right to develop the condominiums. The developer responded with a multi-count complaint, alleging slander and libel. On appeal from the trial court's denial of defendants' motion to dismiss certain counts of the complaint, the court held that the allegedly defamatory statements were constitutionally protected statements of opinion. In reaching its decision with respect to each count, the court first laid out its analytical framework:

> The critical determination of whether the allegedly defamatory statement constitutes fact or opinion is a question of law. The distinction frequently is a difficult one, and what constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole. Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion. 29 Cal.3d at 450–51, 175 Cal.Rptr. at 162, 629 P.2d at 1374, quoting from *Gregory v. McDonnell Douglas Corp.,* 17 Cal.3d 596, 600–601, 131 Cal.Rptr. 641, 644, 552 P.2d 425, 428 (1972) (citations omitted).

The court then went on to hold that each publication challenged by plaintiff was a statement of opinion protected under the First Amendment. Of one such statement, perhaps the most flagrant, the court said:

> The complaint makes clear that the statement was part of a debate over whether the city should permit plaintiff's condominium project. Thus it was in a "setting in which the audience may anticipate efforts ... to persuade ... by use of epithets, fiery rhetoric or hyberbole." (*Gregory, supra,* 17 Cal.3d at 601 [131 Cal.Rptr. 641, 552 P.2d 425] ). The vague charge that plaintiff "entered into a corrupt relationship with Councilman Stone" was not a factual assertion of a crime, but rather an expression of opinion. In context, "corrupt" implied moral criticism of objectives and methods, not the occurrence of bribery. Equally deprecatory words often have been ruled nondefamatory in parallel circumstances. *Id.* at 459 [175 Cal.Rptr. 157, 629 P.2d 1369] (citations omitted).

■ In like manner, this court holds that defendants' motion to dismiss must be granted. The allegedly defamatory statement in the leaflet is, all things considered, protected under the First Amendment as a statement of opinion and therefore can not be the basis of an action for libel. In reaching this result, the court recognizes that a motion to dismiss on the pleadings is a somewhat disfavored vehicle for dispositive adjudication of the merits of a dispute, and that the motion must be denied if, under their complaint, plaintiffs could prove *any* set of facts that would entitle them to relief. On the other hand, the court also recognizes the primary values in our society reflected in the First Amendment and the significant risk that even a non-meritorious defamation action may stifle open and robust debate on issues of public importance. In this area, perhaps more than any other, the early sifting of groundless allegations from meritorious claims made possible by a Rule 12(b)(6) motion is an altogether appropriate and necessary judicial function. At the threshold it is the court, not the jury, that must vigilantly stand guard against even slight encroachments on the fundamental constitutional right of all citizens to speak out on public issues without fear of reprisal. As the New Jersey Supreme Court recently said in *Kotlikoff v. The Community News,* [89] N.J. [62], 494 [444] A.2d 1086, 1088 (N.J.1982):

> Recent developments in the law of libel and defamation have been directed towards preventing people from being discouraged in the full and free exercise of their First Amendment rights with re-

spect to the conduct of their government. . . . The threat of prolonged and expensive litigation has a real potential for chilling journalistic criticism and comment upon public figures and public affairs. Furthermore, the prospect of delay attendant upon *any* defamation trial, no matter how expeditiously handled, may inhibit the full and free exercise of constitutionally protected activities.

See also *Nader v. de Toledano, supra,* 408 A.2d at 42–43; *Washington Post Company v. Keogh,* 125 U.S.App.D.C. 32, 34–35, 365 F.2d 965, 967–68 (1966).

For all of the foregoing reasons, plaintiffs' complaint fails to state a claim on which relief may be granted.[4] Accordingly, it is this 1st day of February, 1983

ORDERED that defendants' motion to dismiss be, and it hereby is, GRANTED, and it is further

ORDERED that the complaint in this action be, and it hereby is, DISMISSED.[5]

/s/ Frederick H. Weisberg

JUDGE FREDERICK H. WEISBERG

February 1, 1983
  Date

EXHIBIT A

FIGHT THE REOPENING

OF THE

LUCKY LADY/WHISTLESTOP

A shady group of bar owners who operate a number of topless/bottomless "GO–GO" dancer bars in D.C., which are the hangouts of motorcycle gangs and toughs, have taken

4. Apart from this court action, plaintiffs were not without recourse to defend themselves against what they considered to be defendants' unwarranted attack on their characters. Plaintiffs had a full hearing before the Alcohol Beverage Control Board and a right of appeal from any adverse ruling to the District of Columbia Court of Appeals. At the argument on defendants' motion to dismiss, counsel for plaintiffs advised the court that the ABC Board denied plaintiffs' application only after finding that plaintiffs were of good moral character. Thus, while *plaintiffs may have lost the war on the* merits of their application, they appear to have won the battle over their good names. The court was further advised that plaintiffs' appeal to the District of Columbia Court of Appeals was dismissed as untimely.

5. Given the court's disposition of this motion on other grounds, the court need not address defendants' remaining contention that the complaint fails to allege that the defamatory statement was "of and concerning" these particular plaintiffs.

over the lease to the Lucky Lady Lounge and reopened it as THE WHISTLESTOP. Plan Takoma, the nonprofit neighborhood group which has led our fights on rezoning and other environmental issues, in coordination with Neighbors Inc. and the Advisory Neighborhood Commissioners, has met three times with the new owners to ask three things:

(1) Assurance that a substantial renovation of the interior and cosmetic improvement of the exterior will be undertaken prior to opening so that community residents are comfortable in patronizing the facility.

(2) Assurance that a clean, bright restaurant (with liquor if necessary) will be substituted for the dirty, dingy Lucky Lady bar and that community residents will be welcome without racial or sexual slurs.

(3) Assurance that D.C. building regulations and historic preservation standards and procedures are met during the renovation.

The owners have illegally begun to brick up the front window (indication of the type of patron they expect); illegally offered discount coupons for drinks (in violation of Title 3, Section 4.9(a) of the D.C. ABC law), refused to do any of the requested things, and reopened with a temporary license which they obtained by claiming financial hardship.

Plan Takoma has voted to oppose their application for a liquor license for those reasons. The hearing will be held at the Alcoholic Beverage Control Board on:

WEDNESDAY, APRIL 29, 1981 at 10:30 AM

Room 200, LL–2

East Potomac Building

605 G St. N.W. (across from the 6th and F St. exit from the Judiciary Square Metro Stop)

We need several things from you:

1. Sign a petition opposing the liquor license
2. Come to the ABC Hearing on April 29
3. Become a Plan Takoma member
4. Contribute money to the legal fund for the ABC hearing

THE SAFETY AND CHARACTER OF YOUR NEIGHBORHOOD ARE AT STAKE!!! PLEASE HELP!

PLAN TAKOMA MEMBERSHIP

I would like to become (or have my family become) a member of PLAN TAKOMA for 1981.

NAME: ................................

ADDRESS: ..............................

TELEPHONE: ...........................

DUES (D.C. tax deductible, federal exemption to be filed):

  $2—Individual    $3—Family

 $——— Additional contribution for ———.