**Gallagher v. Wakefield Sch. Dist.    CV-94-583    02/28/96**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Robert J. Gallagher

    v.                                         Civil No. 94-583-B

Wakefield School District, SAU #64,
Margaret L. Galabrun, Lawrence Tufts,
Charles W. Perrine, and Deborah White


### MEMORANDUM AND ORDER

Robert Gallagher was dismissed from his position as a sixth grade teacher in Wakefield, New Hampshire.  He challenges the adequacy of the school board's termination procedures and the sufficiency of the evidence supporting its decision in claims against the Wakefield School District, School Administrative Unit # 64, and the two school board members who presided at the termination hearing (collectively "the school district defendants").  He also asserts defamation claims against Charles Perrine and Deborah White based on statements they allegedly made to newspaper reporters.  The school district defendants and White have moved for summary judgment.  For the reasons that follow, I grant both motions.

## I.  BACKGROUND

Gallagher had several disagreements with Wakefield School District administrators during the 1990-91 school year.  After he showed his class the film "My Life as a Dog," school principal Katherine Kramer sent him a letter reminding him that he was required to follow the curriculum.  Gallagher responded with a letter defending his decision to show the movie and accusing Kramer of "duplicity with regard to the curriculum."  Kramer also sent Gallagher a memorandum describing a conversation in which she instructed Gallagher to remove the book "Where Do Babies Come From" from his classroom literature shelf.  Gallagher responded to this directive with a memorandum in which he defended the use of the book and called her "rather tunnel-visioned and insensitive" because she had taken the book from one of his students who had it in the school's cafeteria.

On March 21, 1991, School Superintendent Thayer Wade sent Gallagher a memorandum describing an earlier meeting with Gallagher.  According to the memorandum, Wade informed Gallagher that he should not have shown "My Life as a Dog" or exposed his students to "Where Do Babies Come From" because they concerned subjects that were not part of the sixth grade curriculum.  Wade also reportedly admonished Gallagher for criticizing Kramer and

he closed the memorandum by stating "[a]t this point, I have real concern about your continued work as a teacher in the Wakefield school system." Gallagher responded with a letter in which he again defended his actions and communications. Two days later, Wade suspended Gallagher with pay for "gross misconduct and not following the proper program for your classroom." On April 26, 1991, the school district's attorney stated in a letter to Gallagher's attorney that Gallagher had been suspended "because of parental allegations that Mr. Gallagher was hugging and kissing girls in his classroom." The letter did not disclose any other grounds for the suspension.

On June 24, 1991, Wade notified Gallagher that he planned to ask the school board to terminate Gallagher's contract because Gallagher had failed to disclose prior criminal convictions for extortion on his employment application. Wade's letter does not include any other grounds for his decision to recommend Gallagher's dismissal.

The school board commenced a hearing on Wade's request to dismiss Gallagher on July 11, 1991. Gallagher was given a list of eight reasons supporting Wade's request prior to the start of

3

the hearing.[1] The hearing consisted of four separate sessions that spanned a three-month period. Council member Douglas McNutt participated in the first day of the termination hearing but recused himself from any further involvement after he accepted a job with the school district attorney's law firm. The two remaining council members completed the hearing without McNutt. The board received heresay evidence during the hearing from the parents of several of Gallagher's students who alleged that Gallagher had engaged in inappropriate physical contact with their children[2] had berated a child in front of his peers for having offensive body odor, and had blamed another child in front

_____

[1] Those reasons were:

(1) providing incorrect or incomplete responses on his employment application, (2) engaging in inappropriate conduct with students, (3) refusing to follow the established curriculum, (4) failing to follow established procedures for obtaining permission to present materials outside the curriculum, (5) presenting materials to students without first obtaining required approval, (6) using false and misleading letters to parents when obtaining their permission to present materials outside of the curriculum, (7) being hostile and insubordinate to his supervisors, and (8) failing to disclose a prior felony conviction for extortion.

[2] In one case, Gallagher allegedly promised a fourth grade student a candy bar if he let Gallagher tickle him. In another case, Gallagher allegedly knocked a student to the ground and climbed on top of her during a snowball fight. He also allegedly kissed another student on the cheek.

of the class for preventing the class from being able to see any more movies. The board also received evidence that Gallagher had mailed $100 to several of his students as an advance on an anticipated settlement of a future lawsuit he planned to file against the school district. Finally, the board received evidence that Gallagher had been convicted of extortion in 1974 and had been serving a prison sentence at a time when the board interpreted his employment application to indicate that he had been employed as a full time teacher. Gallagher offered testimony from several parents to rebut the evidence against him. However, he refused to testify at the hearing.

Following the hearing, the board issued a written decision dismissing Gallagher pursuant to N.H. Rev. Stat. Ann. 189:13.[3] The board found that Gallagher had (1) repeatedly tickled, hugged, and kissed his students in an inappropriate manner; (2)

---

[3] N.H. Rev. Stat. Ann. 189:13 provides:

> The school board may dismiss any teacher found by them to be immoral or incompetent, or one who shall not conform to regulations prescribed; provided, that no teachers shall be so dismissed before the expiration of the period for which said teacher was engaged without having previously been notified of the cause of such dismissal, nor without having previously been granted a full and fair hearing.

5

inappropriately berated a student based on his personal hygiene, and ridiculed other students who complained to their parents about things that went on in his classroom; (3) sent several of his students $100 bills with letters stating that he was making the payments to include the students in an anticipated future settlement of legal claims arising from his suspension and dismissal; (4) failed to follow the curriculum and established procedures for presenting materials not included in the curriculum; (5) been insubordinate when given instructions on the curriculum by his supervisors; (6) wrongly failed to disclose his prior conviction for extortion; and (7) sent a misleading letter to his students' parents requesting permission to show "My Life as a Dog" in class.

Deborah White and Charles Perrine participated in a public rally outside the school administration building on November 17, 1991, during one of the school board's meetings concerning Gallagher's dismissal. Both White and Perrine made a number of statements about Gallagher that were reported in newspaper articles covering the rally. Among White's reported statements were that Gallagher: (1) was "shady," (2) was "of questionable character," (3) was "very manipulative," and (4) had not changed since his 1974 extortion conviction.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only if the facts taken in the light most favorable to the nonmoving party show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Guzman-Rivera v. Rivera-Cruz</u>, 29 F.3d 3, 4 (1st Cir. 1994). The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 793-94 (1st Cir. 1992), <u>cert. denied</u>, 507 U.S. 1030 (1993).

On issues that the nonmoving party must prove at trial, the moving party initially need only allege the lack of evidence to support the nonmoving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If this standard is satisfied, the nonmoving party cannot rely on the pleadings alone to oppose summary judgment, but must come forward with properly supported facts to demonstrate the existence of a genuine dispute concerning a material fact. <u>Id.</u> at 323-24. A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine dispute concerning a material fact

7

exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.  DISCUSSION

The school district defendants have filed a joint motion seeking summary judgment as to Gallagher's claims against them. Deborah White moves for summary judgment on Gallagher's defamation claims against her.  I address the motions separately beginning with the school district defendants.

### A.    The School District Defendants' Motion

Gallagher claims that the school board violated his due process rights by:  (1) failing to provide sufficient advance notice of the reasons for his proposed dismissal; (2) admitting heresay evidence at the termination hearing; (3) limiting his right to testify on his own behalf; and (4) allowing a member of the school board who later joined the school district attorney's law firm to participate in the first day of the hearing.[4]  He also argues that the board deprived him of procedural due process

_____

[4]  I do not separately consider Gallagher's argument based on the New Hampshire Constitution's due process clause because he has not argued that his right to due process under the state constitution differs materially from his right to due process under the United States Constitution.

8

by terminating him based on insufficient evidence.  I address the sufficiency of each claim in turn.[5]

1. <u>Notice</u>

The Fourteenth Amendment's Due Process Clause requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action [to be taken] and afford them an opportunity to present their objections."  <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950)).  This reasonableness requirement extends both to the content of the notice and its timeliness.  See <u>generally</u>, <u>In re Ruffalo</u>, 390 U.S. 544, 550-52 (1968) (delaying notice that a particular action was a disbarment offense until after subject has presented his case violates due process); <u>Phares v. Gustafsson</u>, 856 F.2d 1003, 1010 (7th Cir. 1988) (notice delayed until the commencement of pretermination hearing satisfied due process where subject was given a one week continuance to respond); <u>Gniotek v. Philadelphia</u>, 808 F.2d 241, 244 (3d Cir. 1986) (notice of charges provided at commencement of employee suspension hearing adequate), <u>cert. denied</u>, 481 U.S. 1050 (1987); <u>Brasslett v. Cota</u>, 761 F.2d 827, 836 (1st Cir. 1989)

---

[5]  I assume that Gallagher has a constitutionally protected property interest in continued employment because defendants do not contend otherwise.

(notice adequate where fire chief was notified of possibility of discharge and "was afforded an ample opportunity to defend his actions and rebut any erroneous allegations").

Gallagher received a detailed statement notifying him of the reasons for his proposed dismissal prior to the commencement of the termination hearing. Although the school administration raised a number of different reasons for his suspension and dismissal at different times, he received notice of all the reasons before his dismissal hearing. Moreover, he was not required to present his response to the charges until almost a month after the hearing commenced.[6] Finally, notwithstanding Gallagher's contrary assertions, the school board did not base its termination decision on uncharged misconduct. Although the board stated that it had decided to terminate Gallagher in part because he had engaged in a "number of incidents" of misconduct, it is clear from the context of this statement that the board was referring to the numerous incidents of misconduct described in the hearing notice. Accordingly, Gallagher's notice argument fails.

---

[6] The board called Gallagher to testify on the second day of the hearing, September 3, 1991. However, he refused to testify, and he was not required to present any evidence on his own behalf until the third day of the hearing, on November 3, 1991.

10

2.  <u>Hearsay</u>

Gallagher next argues that defendants violated his due process rights by admitting hearsay evidence from parents who testified about specific incidents which were reported to them by their children.

New Hampshire school boards are not bound to follow the rules of evidence.  <u>See</u> N.H. Code Admin. R. Ed. 202.02(h).  Moreover, the First Circuit has determined that administrative agencies like the school board may rely on hearsay without violating the subject's due process rights if the hearsay evidence is relevant and reliable.  <u>Beauchamp v. De Abadia</u>, 779 F.2d 773, 775 (1st Cir. 1985).  The evidence in question in this case was obviously relevant and Gallagher offers no evidence to support his claims that it was especially unreliable.  Therefore, this claim necessarily fails.[7]

---

[7] Gallagher could not succeed with his due process claim even if the board erred in admitting the hearsay testimony.  The proponent of a due process claim cannot succeed unless he can establish that he was prejudiced by the alleged due process violation.  <u>Carsetti v. Maine</u>, 932 F.2d 1007, 1014 (1st Cir. 1991).  Here, the board had ample non-hearsay evidence to justify its decision to terminate Gallagher.  Therefore, he cannot demonstrate that he was prejudiced by the admission of the hearsay evidence.

### 3. Gallagher's Refusal to Testify

When counsel for the school district called Gallagher to testify on the second day of the hearing, he refused to do so on the grounds that the school district had charged him with various crimes. He also argued that he should be allowed to delay his testimony until after the resolution of a state court proceeding commenced by the school district that sought records pertaining to Gallagher's involvement with foster children from the Division of Child and Youth Services[8] pertaining to his involvement with foster children. The hearing officer informed Gallagher that because the termination hearing was a civil proceeding, he was obligated to testify when called absent a privilege not to do so, that the board could draw adverse inferences from his failure to testify, and that he would not be allowed to testify later on his own behalf if he refused to testify when called. Gallagher nevertheless refused to testify. In response, the board noted in its decision that Gallagher's refusal to testify at the hearing when he was "in the best position to set the record straight," indicated that the testimony of others was accurate.

_____

[8] Prior to 1994, the Division for Children, Youth, and Families (DCYF) was known as Division for Children and Youth Services (DCYS). N.H. Rev. St. Ann. 212.2 (Supp. 1994).

12

The essence of Gallagher's argument against summary judgment on this issue seems to be that the board violated his right to due process by preventing him from testifying on his own behalf because the board would not delay the hearing until the DCYS proceeding was over. First, there is no dispute that the school board hearing was a civil proceeding. Thus, Gallagher did not have a constitutional right to refuse to testify regardless of what questions might be asked because that right applies only in criminal and quasi-criminal proceedings. See Allen v. Illinois, 478 U.S. 364, 368 (1986). Further, while the Fifth Amendment privilege against self-incrimination permits a person in a civil proceeding to refuse to answer particular questions "`where the answers might incriminate him in future criminal proceedings,'" id. (quoting Minnesota v. Murphy, 465 U.S. 420, 426 (1984)), the privilege may not be invoked "`if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.'" Pillsbury Co. v. Conboy, 459 U.S. 248, 273 (1983) (Blackmun, J. concurring and quoting Brown v. Walker, 161 U.S. 591, 597 (1896)). Here, Gallagher cannot invoke the privilege because he refused to testify at all, without first determining what he would be asked.

13

Gallagher offers no legal support for his argument that the board was obligated to delay the hearing until the DCYS proceeding was resolved, and I have found none. He also does not explain why the Fifth Amendment privilege would not have provided him with sufficient protection against self-incrimination to allow him to testify as requested on subjects that would not have a tendency to incriminate him. Thus, I reject his claim that the board's failure to delay its hearings violated his due process rights.

Finally, I find no merit in Gallagher's argument that the board improperly drew adverse inferences from his failure to testify. See Baxter v. Palmigiano, 425 U.S. 308, 318-20 (1976). The board concluded that Gallagher's refusal to explain the reported incidents of his inappropriate behavior, when he was in the best position to know what happened, meant that the parents' reports were accurate. The board was entitled to draw this inference from Gallagher's failure to testify. See id. at 319 (in a civil proceeding, failure of a party to contest evidence presented against him may be taken as acquiescence); see also F.D.I.C. v. Elio, 39 F.3d 1239, 1248 (1st Cir. 1994). Accordingly, summary judgment is granted as to this claim.

14

4.  Conflict of Interest

Gallagher next contends that the school board's decision violated his right to due process because one member of the board operated with a conflict of interest.  It is undisputed that school board member Douglas McNutt participated as a member of the board at the first day of Gallagher's dismissal hearing held on August 5, 1991.  Before the second day of the hearing, held on September 3, 1991, McNutt accepted a position as an attorney in the law firm of the school district's attorney.  Accordingly, at the beginning of the hearing on September 3, McNutt stated that he had to withdraw because of a conflict of interest.  Although McNutt remained a member of the school board, he did not participate further in the hearings or in the board's decision.  Gallagher nevertheless argues that McNutt's association with the school district's law firm and his continued membership on the board tainted the board's decision.  I disagree.

A decision making body violates due process if its decision is biased or if bias is probable due to prejudgment of the facts or outcome, substantial and direct personal or pecuniary interest, or hostility toward parties or their counsel.  Marshall v. Jerrico, Inc., 446 U.S. 238, 242-43 (1980); Withrow v. Larkin, 421 U.S. 35, 46-47 (1975); Gibson v. Berryhill, 411 U.S. 564,

15

578-79 (1973); <u>Roland M. v. Concord School Committee</u>, 910 F.2d 983, 997-98 (1st Cir. 1990), <u>cert. denied</u>, 499 U.S. 912 (1991). To show unconstitutional bias, Gallagher must "overcome a presumption of honesty and integrity in those serving as adjudicators" by identifying an influence strong enough that it "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." <u>Withrow</u>, 421 U.S. at 47. A speculative, contingent, or remote interest does not violate the due process requirement. <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 826 (1986).

Gallagher has failed to explain how McNutt's actions could have affected the two remaining school board members who made the termination decision. Thus, he has not carried his burden to demonstrate a sufficient interest or risk of actual bias to overcome the presumption of integrity in the school board's decision making process. Summary judgment is granted on this issue.

16

5. <u>Sufficiency of the Evidence</u>

Sufficient evidence in support of an agency's decision exists to satisfy due process requirements[9] as long as the decision is supported by "some evidence." <u>Superintendent, Mass. Correctional Inst. v. Hill</u>, 472 U.S. 445, 454 (1985); <u>Beauchamp</u>, 779 F.2d at 776. Evidence was introduced at the hearing that Gallagher had sent a letter and a one hundred dollar bill to several of his students as part of what he claimed was an "advance" on his anticipated recovery in a lawsuit against the town. This evidence alone is sufficient to justify the school board's decision to dismiss Gallagher pursuant to N.H. Rev. Stat. Ann. § 189:1. Accordingly, I grant summary judgment as to this claim as well.

## B. **Deborah White's Motion**

Gallagher charges that White defamed him in four statements that were reported in the press. White contends that her statements were expressions of opinion rather than actionable statements of fact.

---

[9] I construe Gallagher's insufficiency of the evidence allegation as part of his due process claim under § 1983. N.H. Rev. Stat. Ann. § 189:14 gives a dismissed teacher a right to recover any lost salary resulting from a dismissal in violation of N.H. Rev. Stat. Ann. § 189:13. However, Gallagher has not made a claim for relief under § 189:14.

To prove defamation under New Hampshire law, a private individual plaintiff must show that the "defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118 (1993); accord Duchesnaye v. Munro Enters., 125 N.H. 244, 250 (1984). A statement is defamatory only if it "tends to lower the plaintiff in the esteem of any substantial and respectable group of people." Nash v. Keene Publishing Corp., 127 N.H. 214, 219 (1985).

Opinions can serve as the basis for a defamation claim if the opinion reasonably implies false and defamatory facts. Milkovich v. Lorain Journal Co., 497 U.S. 1, 20-21 (1990); Duchesnaye, 125 N.H. at 249. However, a statement of opinion is not actionable unless it is "sufficiently factual to be susceptible of being proved true or false." Milkovich, 497 U.S. at 21; accord Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 727-28 (1st Cir.), cert. denied, 504 U.S. 974 (1992). Further, an opinion cannot serve as the basis for a defamation action if it is apparent from the surrounding context that the opinion is based solely on disclosed non-defamatory

18

facts.  <u>Standing Committee on Discipline of the U. S. Dist. Court for the Cent. Dist. of Cal. v. Yagman</u>, 55 F.3d 1430, 4439 (9th Cir. 1995); <u>Nash</u>, 127 N.H. at 219; Restatement (Second) of Torts §§ 566, cmt. c (1977) ("A simple expression of opinion based on disclosed . . . nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.").  With these general principles in mind, I examine the specific statements at issue to determine whether a reasonable juror could find them defamatory.

White made statements about Gallagher at the rally held during the school board's meeting considering his dismissal.  Three area newspapers printed articles that included quoted statements by White which Gallagher argues are defamatory.[10]  White "published" the challenged statements to third parties when she talked with the reporters, not when the reporters published their articles in the newspapers.  Thus, everything that White said to the reporters, not merely what each reporter chose to include in the particular articles, must be considered when

_____

[10]  White does not dispute the substance of her statements as quoted in the newspaper articles, but she states in her deposition that the articles omitted some of the discussion relevant to the context of her statements.

19

evaluating the challenged statements. Therefore, I examine the evidence in the record of White's discussions with the reporters to determine whether the challenged statements could reasonably be interpreted to infer undisclosed, verifiable, and defamatory factual assertions.

The challenged statement in the Carroll County Independent appeared as follows:

> Gallagher was also cited as a felon, having been convicted of extortion in Massachusetts in 1974. Takis and White agreed that Gallagher had paid his debt to society, but White said, "Has he changed? I don't think he really has."

Carroll County Independent, November 27, 1991 (emphasis added). Gallagher charges that White's statement, "Has he changed? I don't think he really has," implies that Gallagher has engaged in criminal activity since his extortion conviction. The context of White's statement makes the factual premise of her conclusion clear, however. The Independent article includes White's references to Gallagher sending one hundred dollar bills enclosed in a letter to each of his students, his conviction on extortion charges in Massachusetts in 1974, and her concern that Gallagher concealed his felony conviction when he applied for the teaching position in Wakefield. In her deposition, White confirms that she discussed Gallagher's extortion record with the Independent

20

reporter and explained that she thought Gallagher continued to be dishonest because he did not include his conviction on his employment application and he gave his students one hundred dollar bills after treating them unfairly and unkindly in the classroom. In that context, the factual basis for White's conclusion that Gallagher had not changed is adequately explained, and thus no reasonable juror could understand that her statement implied other undisclosed defamatory facts about Gallagher. Since Gallagher does not challenge the accuracy of the disclosed facts on which White's opinion was based, her statement is not actionable.

Two other statements appeared in one article in The Times:

> "We want him out," said Debra White of Wakefield, one of the rally's organizers. "We don't feel Gallagher is a positive role model for our children. He is a very powerful person; he is very manipulative. He's just not the kind of person we want our children taught under."
> White said she and others opposed to Gallagher's reinstatement have been "bombarding" the school board with phone calls, lobbying for his dismissal.
> "We don't feel our tax money is being wisely spent. We feel there are enough decent teachers who have decent backgrounds, who aren't shady," said White.

Id., vol. 1, no. 6, Nov. 26-Dec. 3 (emphasis added). Foster's Daily Democrat reported a similar statement by White:

> Gallagher was suspended, with pay, in April by Wade. Wade has released no official reason for Gallagher's suspension.

21

> Mrs. White said the school could easily hire another teacher in Gallagher's place. "There's probably so many unemployed teachers out there. <u>We're paying a man with questionable character,"</u> she said.

(Copy provided is undated and emphasis is added).

White argues that the statements characterizing Gallagher as "manipulative," lacking a "decent background," having a "questionable character," and as "shady" are not actionable because they cannot reasonably be interpreted to state actual facts about Gallagher. I agree. <u>See</u> <u>Lewis v. Time Inc.</u>, 710 F.2d 549, 554 (9th Cir. 1983) (holding that labelling plaintiff "shady" was a "wholly subjective comment, not the kind of factual expression for which the Constitution permits liability to be imposed.") <u>Myers v. Plan Takoma, Inc.</u>, 472 A.2d 44, 48 (D.C. App. 1983) (leaflet labeling plaintiffs a "shady group of bar owners" does not imply verifiable facts). <u>See also, e.g.</u>, <u>Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655</u>, 39 F.3d 191, 196 (8th Cir. 1994) ("'Unfair' is a term requiring a subjective determination and is therefore incapable of factual proof."); <u>McCabe v. Rattiner</u>, 814 F.2d 839, 842 (1st Cir. 1987) ("we observe that the word "scam" does not have a precise meaning"); <u>Catalfo v. Jensen</u>, 657 F. Supp. 463, 468 (D.N.H. 1987) ("The word sleazy itself . . . does not have a precise meaning such that is capable of

22

verification"); but see Kleier Advertising, Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1045 (10th Cir. 1990) (use of term "shady" may qualify as a defamatory statement in certain contexts).

The statements at issue cannot be considered defamatory even if they could be understood to imply verifiable facts, because it is apparent from the context in which the statements were made that they were based only on disclosed nondefamatory facts. In her deposition, White stated that the Times article omitted part of her discussion with the reporter in which she explained that Gallagher was manipulative because, as an adult, he was a very powerful person in the eyes of the children, and that permission slips he sent home with the children did not properly explain to the parents the content of the movie he intended to show the class. She also discussed the gift of one hundred dollar bills to his students as being manipulative. She further explained that her statement suggesting Gallagher was shady and lacked a decent background was made in the context of discussing his omission of his felony conviction from his employment application.[11] Similarly, her remark that Gallagher was of

_____

[11] To the extent that Gallagher contends in opposition to summary judgment that White's statements about his employment application were false and defamatory, I note that the school

23

"questionable character" was based on his felony conviction. In that context, those who heard her remarks could not reasonably infer that she based her statements on undisclosed information about Gallagher's misconduct. Instead, her remarks are clearly her opinion based on expressed nondefamatory facts.

Because I conclude that no reasonable listeners could infer actionable facts from White's statements, I resolve the issue as a matter of law and grant summary judgment in White's favor.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the school defendants' motion for summary judgment (document no. 23) is granted, and White's motion for summary judgment (document no. 28) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

February 28, 1996

_____

board made a finding in its decision that Gallagher intentionally failed to identify part of his teaching experience as part time for the purpose of concealing his felony conviction. The board also found, based on the evidence at the hearing, that Gallagher had not revealed his felony conviction as part of his application process. Gallagher's affidavit that he "honestly and completely" filled out the application does not create a factual dispute.

cc:  James Burke, Esq.
     Richard Uchida, Esq.
     Dennis Hallisey, Esq.
     Steven Sacks, Esq.