**Hector GUZMAN–RIVERA, et al., Plaintiffs, Appellants,**

v.

**Hector RIVERA–CRUZ, et al., Defendants, Appellees.**

No. 93–2164.

United States Court of Appeals, First Circuit.

Argued March 10, 1994.

Decided July 13, 1994.

Victoria A. Ferrer–Kerber, with whom Alvaro R. Calderón, Jr. and Law Offices of Alvaro R. Calderón, Jr., Hato Rey, PR, were on brief for appellants.

José R. Gaztambide–Añeses, with whom Benito I. Rodríguez–Massó and Law Offices

of Gaztambide & Plaza, Hato Rey, PR, were on brief for appellees.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

CYR, Circuit Judge.

Plaintiffs Hector Guzman Rivera ("Guzman") and family members appeal a district court judgment dismissing Guzman's civil rights action against various present and former officials of the Commonwealth of Puerto Rico as time-barred. We vacate the summary judgment entered by the district court and remand for further proceedings.

# I

## BACKGROUND

On Christmas Eve, 1987, the manager of a Domino's Pizza establishment in Carolina, Puerto Rico, was shot and killed during an armed robbery. Eyewitnesses identified Guzman as the perpetrator. Guzman, who was living in New York at the time, was extradited, tried, convicted, and sentenced to 119 years' imprisonment. In the wake of the conviction, Guzman's father, Hector Guzman Fernandez, instigated an independent investigation which yielded an "informant" who claimed to have provided the weapon used in the robbery and to know the identity of the real culprit. Guzman's father, proof in hand, set out on August 21, 1989, to secure his son's exoneration.

During the fall of 1989 and the spring of 1990, Guzman's father repeatedly corresponded and met with defendants-appellees Hector Rivera Cruz, Secretary of Justice, and either Luis Feliciano Carreras, Director of the Prosecutor's Office, or his successor, Pedro Geronimo Goyco (collectively, the defendants). During an investigation conducted by the Civil Rights Division of the Puerto Rico Justice Department in March 1990, an eyewitness recanted her identification; the informant confirmed that Guzman was not the killer and identified the real perpetrator; and Guzman's mother attested that her son was in New York at the time of the murder.

The mounting evidence of Guzman's innocence notwithstanding, even after the Civil Rights Division issued its own investigative report concluding that Guzman had not committed the murder, the Director of the Prosecutor's Office refused to authorize Guzman's release. Indeed, at a meeting in April 1990 Guzman's father was informed that the Prosecutor's Office would take no corrective action regarding Guzman until the actual perpetrator had been taken into custody.

At or about June 15, 1990, Guzman filed a motion for new trial with the San Juan Superior Court and served the Secretary of Justice with a motion for release. Before the Secretary of Justice acted on the motion for release, the Governor of Puerto Rico, in response to a request from Guzman's father, directed Guzman's release on June 15, 1990.

Guzman instituted the present action on June 14, 1991. Defendants countered with a motion to dismiss, see Fed.R.Civ.P. 12(b)(6), asserting prosecutorial immunity and the statute of limitations. The district court later entered summary judgment for all defendants-appellees, see Fed.R.Civ.P. 12(b), 56, on the ground that the action was time-barred under the applicable one-year statute of limitations. On appeal, Guzman argues that summary judgment was improvidently granted on the limitations defense because a trialworthy issue existed as to the date on which the section 1983 claim accrued. We agree.

# II

## DISCUSSION

We review a grant of summary judgment *de novo*, employing the same criteria incumbent upon the district court in the first instance. *Velez–Gomez v. SMA Life Assur. Co.*, 8 F.3d 873, 874–75 (1st Cir.1993). Summary judgment is appropriate where the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

Although it is clear that the one-year personal injury limitation applies to the present action, *see, e.g., Lafont–Rivera v. Soler–Zapata*, 984 F.2d 1, 2 (1st Cir.1993);

*see also* P.R.Laws Ann. tit. 31, § 5298 (1991), federal law controls the accrual of section 1983 claims. *Lafont–Rivera*, 984 F.2d at 3. The first step in fixing accrual is to identify the actual injury of which the plaintiff complains. *Heck v. Humphrey*, — U.S. — — —, 114 S.Ct. 2364, 2374–76, 129 L.Ed.2d 383 (1994) (prescribing federal accrual analysis in section 1983 actions predicated on the alleged invalidity of an underlying criminal conviction); *see also LaFont–Rivera*, 984 F.2d at 3. Guzman essentially contends that the defendant officials owed him a constitutionally-based duty to investigate substantial post-conviction allegations of innocence and to release him from confinement upon presentation of an unspecified quantum of exculpatory evidence. The district court indulged Guzman's theory for purposes of its limitations ruling. Although we note scant authority for the theory,[1] we need not determine its viability at this juncture because the actual *injury* implicitly alleged is that Guzman was wrongfully convicted and/or wrongfully detained after defendants were apprised of the exculpatory evidence. We consider the accrual issue in this light.

The Supreme Court recently clarified the circumstances in which section 1983 can be used to redress alleged constitutional deprivations sounding in malicious prosecution, false imprisonment, and false arrest, by outlining the federal accrual analysis applicable to claims akin to the present:

[I]n order to recover for damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

\*   \*   \*   \*   \*   \*

*[Accordingly,] a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.*

*Heck*, — U.S. at —, 114 S.Ct. at 2374–76 (emphasis added). We now apply the *Heck* analysis to the present action.

It is clear from the summary judgment record that Guzman was released from prison on June 15, 1990, less than one year prior to the filing of the instant action. Therefore, if the conviction was "reversed[,] ... expunged ... [or] held invalid," *id.*, by competent executive or judicial action[2] *not earlier than* June 14, 1990, an actionable section 1983 claim "for harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid," *id.*, would not be

---

1. Guzman relies on a fragment of dicta from *Maslauskas v. United States*, 583 F.Supp. 349 (D.Mass.1984)—a Federal Tort Claims Act case wherein the court observed that "in certain circumstances the government owes prisoners a continuing duty to uncover 'the absence of a constitutionally adequate basis for confinement,'" *id.* at 351 (citing *Steubig v. Hammel*, 446 F.Supp. 31, 33 (M.D.Pa.1977))—but ignores the very next clause in the district court opinion which emphasizes that the government generally "does not owe the prisoner a continuing duty to review and re-review" the basis for confinement, *id.* Moreover, *Steubig*, like *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), involved an attempt to use section 1983 to redress excessive confinement arising from an inaccurate assessment of the progress of a patient involuntarily committed to a mental health facility. Of course, as the district court itself suggested, *see Maslauskas*, 583 F.Supp. at 351, the government's "continuing duty to review and re-review" the basis for confinement is more

clear in those circumstances. Other cases relied on by Guzman are likewise inapposite. *See Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir.1988) (section 1983 used to redress excessive confinement arising from mistaken incarceration of plaintiff after judicial exoneration); *Haygood v. Younger*, 769 F.2d 1350 (9th Cir.1985) (*en banc*) (section 1983 used to redress excessive confinement arising from miscalculation of sentence), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

2. Guzman's *brief* on appeal represents that his release was prompted by the intervention of the Governor of Puerto Rico. However, the official record of the Puerto Rico Administration of Corrections indicates that Guzman was released on bond June 15, 1990, after his motion for new trial had been granted. The record does not disclose whether a new trial has ever been conducted, nor whether any governmental action has been taken to expunge or invalidate the conviction.

time-barred. The summary judgment proceedings included in the appellate record do not enable a determination as to whether, and if so, when, Guzman's conviction was undone. Consequently, as the accrual issue cannot be resolved on the present record, summary judgment was premature. *See, e.g., Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 934 (1st Cir. 1987) (if material factual issues require resolution before pivotal legal issue can be decided, summary judgment must be vacated).

## III

### *CONCLUSION*

The district court judgment must be vacated. The case shall be remanded to permit the district court to determine whether Guzman's conviction was ever invalidated as required under *Heck. See Heck*, —— U.S. at ——, 114 S.Ct. at 2374–76. If not, the section 1983 claims against all defendants shall be dismissed, without prejudice, as premature. Otherwise, any actionable section 1983 claim shall be deemed to have accrued not earlier than the date on which Guzman's conviction was reversed, expunged or otherwise determined invalid, *see id.*

*The district court judgment is vacated; the case is remanded for further proceedings consistent with this opinion; costs to appellants.*