USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1369 MANUELA RODRIGUEZ, ET AL., Plaintiffs, Appellants, v. UNITED STATES OF AMERICA, Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, Senior U.S. District Judge] __________________________  ____________________ Before Torruella,* Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Juan Rafael Gonzalez-Munoz, with whom Gonzalez Munoz Law Office, __________________________ _________________________ Gerardo Pavia-Cabanillas and Moreda & Moreda were on brief for _________________________ _________________ appellants. Peter R. Maier, Attorney, Guillermo Gil, United States Attorney, ______________ _____________ Frank W. Hunger, Assistant United States Attorney, and Robert S. ________________ __________ Greenspan, Attorney, were on brief for appellee. _________  ____________________ May 15, 1995  ____________________  ____________________ *Chief Judge Torruella heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel opinion. The opinion is therefore issued pursuant to 28 U.S.C. 46(d). CYR, Circuit Judge. Plaintiffs-appellants Manuela CYR, Circuit Judge. _____________ Rodr guez and family members challenge the summary judgment entered in the United States District Court for the District of Puerto Rico dismissing their Federal Tort Claims Act ("FTCA") suit for damages resulting from the errant arrest and imprison- ment of Manuela Rodr guez by the United States Marshals Service pursuant to a valid warrant. We affirm the district court judgment. I I BACKGROUND1 BACKGROUND __________ On March 14, 1975, in Mineola, New York, an individual who identified herself as "Manuela Rodr guez" was arrested on drug charges by the United States Drug Enforcement Administration ("DEA"). The arrestee provided DEA with a social security number and the following additional information which the agents record- ed on a standard DEA booking form: sex: female; height: 5'; ___ ______ weight: 140 pounds; race: white; place of birth: Maranjito ______ ____ ______________ [sic], Puerto Rico; date of birth: December 29, 1942; ________________ citizenship: United States; identifying characteristics: scar ___________ ___________________________ on stomach, right-handed; eyes: brown; hair: brown; mother: ____ ____ ______ deceased; father: deceased; sister: Martha Rodriques. On April q ______ ______ 7, 1975, the United States District Court for the Southern District of New York issued an arrest warrant against "Manuela  ____________________ 1The relevant facts are recited in the light most favorable to plaintiffs-appellants, against whom summary judgment was entered. See ___ Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, 874 (1st Cir. 1993).  ___________ ___________________ 2 Rodr guez," directed to the DEA for execution. The DEA never g located the subject. In 1989, the United States Marshals Service became responsible for executing DEA arrest warrants, and Deputy Marshal Sandra Rodr guez ("Deputy Rodr guez"), Southern District of New York ("SDNY"), was assigned to locate the subject of the 1975 arrest warrant. Sometime later, a credit bureau check by Deputy Rodr guez yielded a fresh lead: a "Manuela Rodr guez" residing in Bayam n, Puerto Rico, with the identical social security number recorded in the 1975 DEA booking form. Deputy Rodr guez promptly dispatched an "arrest packet" to the United States Marshals Service, District of Puerto Rico ("DPR"), which included copies of the 1975 DEA booking form and a handwritten information form prepared by the United States Marshals Service, SDNY. Deputy Rodr guez requested the United States Marshals Service, DPR, to "check the following lead." Her cover memorandum summarized most of the identifying information in the accompanying documents and included the following addi- tional information: a/k/a Lopez, Dora Restrepo, a/k/a Restrepo, _____ _____ _____________ _____ ________ Dora; weight: 140 (back in 1975); sister: Martha Rodr guez. g ____ ____ __ Even though Deputy Rodr guez, just five days earlier, had shown a photograph of the 1975 arrestee in the New York City neighborhood where "Manuela Rodr guez" was last believed to have resided, her cover memorandum noted: "photo not available." Nor did Deputy Rodr guez request fingerprints for inclusion in the arrest packet. Shortly after the arrest packet reached Puerto 3 Rico on January 26, 1990, the deputy marshals assigned to the case, C sar Torres and Eugenio D az, requested that the United States Marshals Service, SDNY, forward a photograph of the subject. The record is silent as to whether fingerprints were requested. In any event, Deputies Torres and D az once again were advised that no photograph was available and that SDNY could provide no additional information. On February 8, 1990, after confirming that a Manuela Rodr guez indeed was residing at the Bayam n address listed in the arrest packet, Deputies Torres and D az alerted a magistrate judge that an arrest was imminent. Later in the afternoon, Deputies Torres and D az proceeded to the Bayam n address to execute the arrest warrant, and identified themselves to plain- tiff-appellant Pedro Gonzalez Martinez ("Martinez"), plaintiff Rodr guez's husband. Martinez phoned plaintiff Rodr guez at her place of work, and she arrived home at approximately 4:50 p.m. At her insistence, the deputies interviewed plaintiff Rodr guez in the presence of her family. She confirmed most of the information provided in the arrest packet, including her full name, social security number, birthplace, birthdate, abdominal scar, right-handedness, and that both her parents were deceased. Prior to her arrest, plaintiff also told the deputy marshals that she had a sister named "Marta Rodr guez." Although the summary t g judgment record reveals that plaintiff Rodr guez has three siblings, including a sister named "Maria" and/or "Marta," the only grounds asserted in opposition to summary judgment below ____ 4 were the alleged three-inch height difference, a twenty-pound weight difference, an additional scar on plaintiff Rodr guez's forehead, the failure of the United States Marshals Service, SDNY, to forward a photograph and fingerprints to Puerto Rico, and the failure of Deputies Torres and D az to request finger- prints. When Deputies Torres and D az advised that they had an arrest warrant for "Manuela Rodr guez," plaintiff protested to no avail that she could not be the individual named in the warrant since she had never been to New York. Immediately after the arrest, the deputies attempted likewise to no avail to contact a magistrate judge, then booked plaintiff and transported her to a pretrial detention facility for incarceration pursuant to the provisional commitment order previously issued by the magistrate judge. The following day, February 9, plaintiff was brought before a magistrate judge and released on personal recog- nizance pending a removal hearing on February 13, 1990. In anticipation of the removal hearing, Deputy D az again requested a photograph of the 1975 arrestee from the United States Marshals Service, SDNY. Finally, on February 10, a photograph taken at the Mineola Police Department at the time of the 1975 arrest was mailed to Puerto Rico. When the photograph arrived on February 12, it was readily determined that plaintiff Rodr guez was not the "Manuela Rodr guez" arrested in 1975. On February 13, the government moved to dismiss all proceedings against plaintiff Rodr guez. 5 In due course the United States Marshals Service disallowed the administrative claim filed by plaintiffs-appel- lants, clearing the way for the present action against the United States for false arrest and false imprisonment based solely on the conduct of its deputy marshals in (1) initiating, through Deputy Rodr guez, the wrongful arrest and detention of plaintiff Rodr guez pursuant to the 1975 arrest warrant without obtaining or forwarding a photograph and fingerprints of the 1975 arrestee to the District of Puerto Rico; (2) executing the arrest warrant, through Deputies Torres and D az, without a photograph and fingerprints of the subject and notwithstanding the height and weight differences between plaintiff Rodr guez and the 1975 arrestee; and (3) delaying plaintiff Rodr guez's initial appear- ance before a magistrate judge.2 The United States moved for summary judgment on all claims. The district court ruled that plaintiffs had not gener- ated a trialworthy dispute as to whether the arresting deputies had a reasonable basis for believing that plaintiff Rodr guez was the subject named in the 1975 arrest warrant. It concluded that the arresting deputies, with valid warrant in hand, were under no duty to corroborate their reasonable identification by obtaining either fingerprints or a fifteen-year-old photograph and that any failure on the part of Deputy Rodr guez to gather or forward such information was immaterial because the information made available  ____________________ 2Appellants have not pursued the latter claim on appeal. 6 to Deputies Torres and D az prior to the arrest was adequate to support a reasonable belief by the arresting deputies that plaintiff Rodr guez was the person named in the 1975 warrant. Plaintiffs-appellants challenge the district court rulings, on two grounds: (1) that Deputies Torres and D az, with neither a photograph nor the fingerprints of the 1975 arrestee, could not have formed a reasonable belief that plaintiff Rodr - guez was the subject of the 1975 warrant, particularly in light of the height and weight discrepancies; and (2) that Deputy Rodr guez negligently failed to include a photograph and finger- prints of the 1975 arrestee in the arrest packet transmitted to the United States Marshals Service, DPR. The United States responds in kind. First, it claims that Deputies Torres and D az had reasonable cause to believe that plaintiff Rodr guez was the 1975 arrestee; hence, they were not negligent. Second, even assuming negligent conduct on the part of Deputy Rodr guez in the pre-arrest investigation, federal law enforcement officers owe no duty to exercise reasonable care in conducting pre-arrest investigations and, secondly, FTCA 2680(h) waives sovereign immunity from suit for certain enumerated intentional torts only among them false arrest and false imprisonment and not for mere negligent investigation. II II DISCUSSION DISCUSSION __________ A. Summary Judgment A. Summary Judgment ________________ 7 A grant of summary judgment is subject to plenary review under the same criteria incumbent on the district court. Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 4 (1st Cir. 1994). _____________ ___________ Summary judgment is appropriate where the record, viewed in the light most conducive to the party resisting summary judgment, reveals no trialworthy issue of material fact, and the party requesting it is entitled to judgment as a matter of law. Id. ___ B. Sovereign Immunity B. Sovereign Immunity __________________ For many years the general waiver of sovereign immunity afforded by FTCA 2674 permitted tort actions to be brought against the United States "in the same manner and to the same extent as [against] a private individual under like circumstances," 28 U.S.C. 2674, except for such so-called ______ "intentional torts" as assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, and interference with con- tract rights, 28 U.S.C. 2680(h). Then, in 1974 Congress narrowed the "intentional torts" exception so as to enable ________ _________ actions against the United States based on six state-law torts assault, battery, false imprisonment, false arrest, abuse of process and malicious prosecution arising from acts or omis- sions of its "investigative or law enforcement officers." Id. ___ Thus, the United States is liable "in the same manner and to the same extent" for a false arrest of plaintiff Rodr guez, "as a private individual" would be in "like circumstances" under the applicable state law. 8 C. Applicable Substantive Law C. Applicable Substantive Law __________________________ The FTCA ordains that the "law of the place" where the act or omission occurred shall govern actions for damages against the United States. 28 U.S.C. 1346(b). Its reference to the "law of the place" encompasses choice-of-law principles. See ___ Richards v. United States, 369 U.S. 1, 11-13 (1962); In re All ________ _____________ _________ Maine Asbestos Litigation, 772 F.2d 1023, 1029 (1st Cir. 1985), _________________________ cert. denied, 476 U.S. 1126 (1986). As all material acts and _____ ______ omissions by Deputy Rodr guez took place in New York, we would look to New York law for the rule of decision applicable to her actions. New York choice-of-law principles provide that conduct- regulating causes of action normally are governed by the law of the place where an actionable injury is sustained. See Schultz ___ _______ v. Boy Scouts of Am., Inc., 480 N.E.2d 679, 684 (N.Y. 1985).  _______________________ Any injury to plaintiff Rodr guez was sustained in Puerto Rico. Moreover, the parties, as well as the district court, assumed from the start that Puerto Rico law governs any actionable claim predicated on alleged acts and omissions of Deputy Rodr guez in New York. In these circumstances, we do likewise, see Commercial Union Ins. Co. v. Walbrook Ins. Co., ___ __________________________ ___________________ Ltd., 7 F.3d 1047, 1048 n.1 (1st Cir. 1993), since Puerto Rico ____ law bears a "reasonable relation" to all claims in litigation. Finally, since the false arrest and false imprisonment claims under Puerto Rico law raise no relevant distinction in the present context, we treat them as identical causes of action. 9 Cf. Ayala v. San Juan Racing Corp., 112 P.R. Dec.804, 812 (1982). ___ _____ _____________________ D. The False Arrest Claims Relating D. The False Arrest Claims Relating ________________________________ to Deputy Marshals Torres and D az to Deputy Marshals Torres and D az __________________________________ Plaintiff Rodr guez contends that Deputies Torres and D az subjected her to false arrest by executing the 1975 warrant despite certain discrepancies between the physical description given by the 1975 arrestee and the physical description and biographical data Deputy Rodr guez provided to the arresting officers. These discrepancies were sufficient, she argues, to engender a reasonable doubt which the arresting deputies should have resolved by obtaining a photograph or fingerprints of the 1975 arrestee. Their failure to do so therefore precluded summary judgment on the central issue whether the arresting officers could have harbored a reasonable belief that plaintiff was the person named in the arrest warrant. Misidentification cases comprise a distinct subset of false arrest claims, for which particularized rules and standards were fashioned at common law. See Restatement (Second) of Torts, ___ _____________________________ 125 (1965). Even though many such claims have found their way into the courts over the years, see William B. Johnson, Liability ___ _________ for False Arrest or Imprisonment Under Warrant as Affected by _________________________________________________________________ Mistake as to Identity of Person Arrested, 39 A.L.R.4th 705 _____________________________________________ (1985), careful research has disclosed no reported Puerto Rico Supreme Court decision addressing a false arrest claim based on the execution of a valid arrest warrant against the wrong person. 10 As a general matter, however, the Puerto Rico Supreme Court has conformed its limited "false arrest" jurisprudence to common law principles. See, e.g., Ayala, 112 P.R. Dec. at 813 ___ ____ _____ (citing common law sources, including Restatement (Second) of ________________________ Torts); Dobbins v. Hato Rey Psychiatric Hosp., 87 P.R.R. 28, 31- _____ _______ __________________________ 32 (1962) (citing common law sources, including Restatement, ____________ Torts (1938)). Accordingly, consistent with our longstanding _____ practice in cases where the Puerto Rico court has not diverged from common law principles, see Importers Ctr., Inc. v. Newell ___ ____________________ ______ Cos., Inc., 758 F.2d 17, 20 (1st Cir. 1985) (looking to Restate- __________ ________ ment (Second) of Contracts (1979), absent controlling Puerto Rico __________________________ law); United States v. Marshall, 391 F.2d 880, 883 (1st Cir. _____________ ________ 1968) (citing Restatement, Torts, where Puerto Rico Supreme Court ___________ _____ demonstrated pattern of reliance on common law authority), we adopt the Restatement (Second) of Torts, 35-45A, 112-36, as ______________________________ the appropriate framework for analysis of the instant false arrest claim. 1. Conditional Privilege 1. Conditional Privilege _____________________ Generally speaking, an arrest conducted pursuant to a valid warrant is conditionally privileged, and no false arrest liability lies against the officers responsible. Restatement ___________ (Second) of Torts, 118, 122 (1965). Moreover, where an __________________ agent's privilege is "properly exercised on his principal's _______ behalf," the principal likewise has a defense to an action based on the conduct of the agent. Restatement (Second) of Agency,  ______________________________ 11 217(a)(iii) (1958).3 The privilege attaching to the conduct of a government employee acting within the scope of his employment likewise has been recognized as a defense available to the United States in actions based on the so-called intentional torts enumerated in FTCA 2680(h). See, e.g., Arnsberg v. United ___ ____ ________ ______ States, 757 F.2d 971, 978-79 (9th Cir. 1985) (government liabili- ______ ty for false arrest under FTCA determined in light of privilege accorded law enforcement officer effecting arrest), cert. denied, _____ ______ 475 U.S. 1010 (1986); Caban v. United States, 728 F.2d 68, 74 (2d _____ _____________ Cir. 1984) (same). Thus, the United States is entitled to assert in its defense a conditional privilege conferred upon its agent by applicable local law in the same manner and to the same extent as a nongovernmental principal could assert in similar circum- stances. The legislative history accompanying the 1974 amendment makes clear that Congress intended "to make the Government independently liable in damages for the same type of conduct that ____ ____ is alleged to have occurred in Bivens (and for which that case ______ ___ ___ _____ ____ ____ imposes liability upon the individual Government officials _______ _________ ____ ___ __________ __________ _________  ____________________ 3Section 217. Where Principal or Agent has Immunity or Privilege Section 217. Where Principal or Agent has Immunity or Privilege In an action against a principal based on the conduct of a In an action against a principal based on the conduct of a servant in the course of employment: servant in the course of employment: (a) The principal has a defense if: (a) The principal has a defense if: . . . . . . . . (iii) the agent had a privilege which he properly (iii) the agent had a privilege which he properly exercised on his principal's behalf . . . . exercised on his principal's behalf . . . . Restatement (Second) of Agency, 217(a)(iii). ______________________________ 12 involved)." See S. Rep. No. 588, 93d Cong., 2d Sess. 3 (1973), ________ ___ reprinted in 1974 U.S.C.C.A.N. 2789, 2791 (emphasis added); see _________ __ ___ also Bivens v. Six Unknown Named Agents of Fed. Bureau of Nar- ____ ______ _________________________________________________ cotics, 403 U.S. 388 (1971). ______ Although it is undisputed that plaintiff Rodr guez was arrested pursuant to a valid arrest warrant, the conditional privilege would not insulate the arresting officers from liabili- ty unless the arrestee was (a) . . . a person sufficiently named or otherwise described in the warrant and [was] reasonably believed ___ by the [officer] to be, the person intended, or __ (b) although not such person, . . . knowingly caused the actor[s] to believe [her] to be so. Restatement (Second) of Torts, 125 (emphasis added). Since the _____________________________ record plainly reflects that plaintiff Rodr guez maintained throughout that she was not the person named in the 1975 warrant, ___ we need only inquire pursuant to subsection 125(a) whether (1) she was "sufficiently named or otherwise described in the warrant" and (2) Deputies Torres and D az "reasonably believed" that she was "the person intended" in the warrant. See id. ___ ___ 125(a). First and foremost, there can be no question that the person arrested was "sufficiently named" in the 1975 arrest warrant, see id. 125(a), which directed the arrest of a person ___ ___ with the same name as plaintiff Rodr guez. A law enforcement officer "is privileged to arrest the person to whom the name [in the warrant] applies with complete accuracy, although the [offi- 13 cer] may have reason to suspect that a mistake has been made, and _______ that the person, though accurately named, is not the person intended." Id. 125 cmt. f (emphasis added).  ___ The United States argues that the name in the 1975 warrant, together with the information contained in the arrest packet, provided ample basis for Deputies Torres and D az to form an objectively reasonable belief that plaintiff Rodr guez was the person named in the warrant. Indeed, the information plaintiff herself provided in response to questions from the deputies comported in virtually every detail with the physical description in the arrest packet, except for a three-inch discrepancy in ______ height and a twenty-pound difference in weight.4 We agree with the government that these slight discrepancies minor variations between the plaintiff's physi- cal description and the fifteen-year-old DEA booking form de- scription could not have undermined the objective reasonableness of the arresting deputies' belief that plaintiff was the person named in the 1975 warrant. Furthermore, apparent-  ____________________ 4The arresting deputies confirmed that plaintiff Rodr guez's birthplace, birthdate, abdominal scarring, right-handedness, citizen- ship, race, and Social Security number were all identical to the data contained in the arrest packet. Plaintiff even confirmed that her sister had the same name as that which the 1975 arrestee had given for her sister. Finally, plaintiff informed Deputies Torres and D az that, like the 1975 arrestee, both her parents were deceased as well. The record is silent as to whether anyone (including plaintiff) noted the three-inch height discrepancy at the time of arrest. The twenty-pound weight difference was reasonably attributed by the deputies to the fact that almost fifteen years had passed since the arrest of "Manuela Rodr guez" in Mineola, New York. 14 ly mindful of the risks inherent in executing a fifteen-year-old arrest warrant, Deputies Torres and D az prudently attempted to obtain further information, as well as a photograph, from the United States Marshals Service, SDNY, but were told that no photo or additional information was available. Indeed, the arresting deputies even afforded plaintiff Rodr guez an opportunity to explain how anyone other than she could have provided the DEA with all this information in 1975. Plaintiff Rodr guez was unable to explain then and offers no explanation now. Their painstaking efforts could have left Deputies Torres and D az with little inkling let alone a reasonable __________ belief that plaintiff Rodr guez was not the "Manuela Rodr - ______ ___ guez" named in the arrest warrant. Thus, notwithstanding their errant arrest of an innocent person, the arresting officers having utilized every available means to preclude misidentifica- tion were left with no grounds for forming a reasonable belief that plaintiff Rodr guez was not the person intended in the 1975 arrest warrant. Consequently, the execution of the valid 1975 arrest warrant by Deputies Torres and D az was privileged. And, lastly, the United States was entitled to rely on the privilege which attached to the arresting deputy marshals as a complete defense to liability for false arrest, as provided by Restatement ___________ (Second) of Agency, 217(a)(iii).  __________________ E. The Claims Relating to Deputy Rodr guez E. The Claims Relating to Deputy Rodr guez _______________________________________ Plaintiffs-appellants further contend that the United States is liable for the "negligent investigation and initiation 15 of arrest proceedings" by Deputy Rodr guez. The United States counters that federal law enforcement officers owe no legal duty to exercise reasonable care in conducting pre-arrest investi- gations. Additionally, it argues that FTCA 2680(h) waives sovereign immunity from suit for six enumerated intentional torts only -- assault, battery, false imprisonment, false arrest, abuse of process and malicious prosecution. Thus, according to the United States, even if local law afforded a right of action for negligent investigation and initiation it would be barred by sovereign immunity. 16 1. Negligent Investigation 1. Negligent Investigation _______________________ Plaintiffs-appellants point to no authority which recognizes a right of action for "negligent investigation" in these circumstances, nor have we found any authority for imposing liability on the sovereign for negligent investigation, whereas several courts have rejected such claims. See, e.g., Smith v. ___ ____ _____ State, 324 N.W.2d 299, 302 (Iowa 1982); Landeros v. City of _____ ________ _______ Tucson, 831 P.2d 850, 851 (Ariz. App. Ct. 1992); Wimer v. State, ______ _____ _____ 841 P.2d 453, 455 (Idaho App. Ct. 1992); cf. Bernard v. United __ _______ ______ States, 25 F.3d 98, 102 (2d Cir. 1994) (applying New York law in ______ FTCA action and rejecting claim that law enforcement officers failed to exercise due care in effecting arrest); Boose v. City _____ ____ of Rochester, 421 N.Y.S.2d 740, 744 (N.Y. App. Div. 1979) (ruling ____________ that plaintiff "may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution"). We therefore decline the invitation to speculate that the Puerto Rico Supreme Court would be receptive to such a claim. 2. Instigation of False Arrest 2. Instigation of False Arrest ___________________________ Plaintiffs-appellants cite Sami v. United States, 617 ____ ______________ F.2d 755 (D.C. Cir. 1979), as support for their contention that the United States may be sued for the conduct of Deputy Rodr guez in initiating the errant arrest. Sami held that FTCA 2680(h) ____ opens the government to suit for false arrest even though its law enforcement officer was not directly involved in "frontline law ___ 17 enforcement work." See id. at 764; but cf. Pooler v. United ___ ___ ___ ___ ______ ______ States, 787 F.2d 868, 872 (3d Cir.) (restricting waiver of ______ sovereign immunity effected under FTCA 2680(h) to enumerated torts by investigative or law enforcement officers "in the course of a search, a seizure or an arrest"), cert. denied, 479 U.S. 849 _____ ______ (1986). We need not resolve the question addressed in Sami, ____ however, since we conclude that no right of action would lie under the legal principles likely to be applied by the Puerto Rico Supreme Court based on the conduct of Deputy Rodr guez. One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false arrest. Restatement (Second) of Torts, 45A. "Instiga- ______________________________ tion" is defined as "words or acts which direct, request, invite or encourage the false [arrest] itself." Id. 45A cmt. c. "In ___ the case of an arrest, [instigation] is the equivalent, in words or conduct, of 'Officer, arrest that man!'" Id. Though it is by ___ no means clear that Deputy Rodr guez's request to "check the following lead," see supra p. 3, amounted to "instigation" as ___ _____ defined in the Restatement, we consider whether Deputy Rodr guez ___________ herself would be liable for instigating a false arrest of plain- tiff Rodr guez in these circumstances. Instigation of false arrest, like the underlying tort itself, is subject to the conditional privilege accorded arrests effected pursuant to a valid warrant. Id. 45A cmt. b. Conse- ___ quently, the conduct of Deputy Rodr guez would be privileged so long as the arrestee was "sufficiently named or otherwise de- 18 scribed in the warrant" and the officer instigating the arrest ___ ___________ "reasonably believed" that plaintiff Rodr guez was "the person intended" in the arrest warrant. Id. 125(a); see id. 45A ___ ___ ___ cmt. b. As noted above, see supra p. 13, there is no question ___ _____ but that plaintiff Rodr guez was "sufficiently named" in the 1975 warrant. Nor did the evidence developed at summary judgment generate a trialworthy dispute as to whether Deputy Rodr guez "reasonably believed" that the person identified in the arrest packet she forwarded to Puerto Rico was the person intended by the 1975 arrest warrant. See id. 125 cmt f. Moreover, plain- ___ ___ tiffs-appellants have never suggested, either below or on appeal, that their opportunity to conduct discovery was inadequate. The record evidence reflects that Deputy Rodr guez matched the name and social security number of the fugitive with the name and social security number of an individual residing in Puerto Rico. The arrest packet Deputy Rodr guez forwarded to Puerto Rico included extensive personal and family information provided by the "Manuela Rodr guez" arrested in 1975, which matched almost precisely the personal and family information gathered on plaintiff Rodr guez in 1990. There were two minor discrepancies between the information provided by the 1975 arrestee and that provided by plaintiff Rodr guez: a three-inch height difference and a twenty-pound weight difference. But there is no record evidence whatsoever to suggest that Deputy Rodr guez was even aware of these discrepancies. 19 Thus, the information forwarded by Deputy Rodr guez, when matched with the information relating to plaintiff Rodr guez herself, afforded ample basis for forming an objectively reason- able belief that plaintiff Rodr guez was the person named in the 1975 arrest warrant. Consequently, Deputy Rodr guez's conduct relating to the errant arrest, even assuming it were actionable as a negligent instigation claim, would be conditionally privi- leged, see Restatement (Second) of Torts, 125(a), and the ___ _______________________________ United States would be entitled to assert the privilege in its own defense. See supra pp. 11-15; Restatement (Second) of ___ _____ _________________________ Agency, 217(a)(iii).5 ______ III III CONCLUSION CONCLUSION __________ As the challenged conduct of all three Deputy United States Marshals was privileged, summary judgment was properly entered for the United States. Affirmed. The parties shall bear their own costs. Affirmed. The parties shall bear their own costs. ________ ______________________________________ - Concurring Opinion Follows -  ____________________ 5Nevertheless, given the many uncontrolled ramps leading onto and off the "information highway," Judge Bownes' wise counsel clearly offers law enforcement agencies the best means of avoiding recurrences of the insufficiently explained wrong done in this case. As my brother cautions, all law enforcement officers whether directly involved in effecting an arrest or simply in gathering and forwarding information for use by the arresting officers should exercise the high degree of care commensurate with the seriousness of their mis- sion. 20 BOWNES, Senior Circuit Judge, concurring in the BOWNES, Senior Circuit Judge _____________________ judgment. I agree with the judgment mainly because there was an improbably close match between the information provided by the plaintiff and the detailed information in the arrest packet. Given this level of specificity and similarity, I must conclude that it would be entirely unreasonable for a finder-of-fact to posit liability against the government. It was not the government which was culpable but the impostor who framed the plaintiff some fifteen years before the ar- rest. I write separately, however, to emphasize that the Restatement principles underlying our decision should not be applied mechanically where multiple government actors are engaged in collective action. In my view, it would be a mistake to treat the New York and Puerto Rico marshals piece- meal, as isolated actors rather than as co-agents of a common principal. Under the right circumstances, co-agents may have a duty to exchange certain information; where there is such a duty, the reasonableness of a given act -- and the princi- pal's liability for that act -- should be judged in light of what the actor knew or should have known, assuming the rea- sonable conduct of other concerned actors. This concept of imputed knowledge seems consistent with agency and vicarious liability principles. 20 The failings of the piecemeal approach can be illustrated using the facts of this case. A piece of infor- mation may mean little in the abstract to the person who holds it, but might be decisive to another actor in context. In this case, a photograph remained inert in Deputy Rodri- guez's file; had it been forwarded to the Puerto Rico mar- shals in the field, it would have prevented the plaintiff's arrest. Although I agree with my brother that, in light of the specificity of the information in her arrest packet, Deputy Rodriguez had no reason to fear that the wrong person might be arrested, the opinion nevertheless obscures the government's one regrettable omission. After all, the Puerto Rico marshals saw fit to request the photograph; and the United States has never explained why it was not timely sent. I doubt that common law principles either dictate a piecemeal approach, or foreclose a more integrated view of collective action. Indeed, my brother's opinion momentarily adopts an integrated view when it rejects the instigation claim against Deputy Rodriguez. See ante at 18 ("The arrest ___ ____ packet Deputy Rodriguez forwarded to Puerto Rico . . . matched almost precisely the personal and family information gathered on plaintiff Rodriguez in 1990."). This correspon- dence matters only if Deputy Rodriguez is imputed with the 21 knowledge of information that was gathered solely by the Puerto Rico marshals. In sum, I have no quarrel with the bulk of my brother's scholarly opinion. I merely wish to raise a word of caution against judging co-agents of a common principal as isolated actors; their actions should be assessed as of one piece. 22