Blaisdell v. Rochester, et al.        CV-97-082-M    08/28/98
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


George Blaisdell,
        Plaintiff

        v.                                    Civil No. 97-82-M

City of Rochester, New Hampshire;
Gary Stenhouse; Danford J. Wensley;
Donald L. Vittum, and James Twombley,
        Defendants


                          **O R D E R**


        Plaintiff, George Blaisdell, has sued the City of Rochester;

City Manager Gary Stenhouse; counsel for the city, Danford J.

Wensley; Police Chief Donald L. Vittum; and City Councilman James

Twombley, asserting a conspiracy to violate the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1962

("RICO"), violations of his federal constitutional rights

actionable under 42 U.S.C.A. § 1983, and state law causes of

action.  Defendants move to dismiss plaintiff's claims as time

barred and, with respect to some claims, for failure to state an

actionable claim.  Plaintiff moves for summary judgment in his

favor on his claims in counts I and X.  For the reasons that

follow, defendants' motion is granted in part and denied in part,

plaintiff's motion is denied.


                     **Standard of Review**

        Because defendants have filed their answer to plaintiff's

complaint, and consequently, pleadings have closed under Federal

Rule of Civil Procedure 7(a), the court will treat defendants' motion as a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c); see also Preyer v. Dartmouth College, 968 F. Supp. 20, 23 (D.N.H. 1997). The standard for evaluating a Rule 12(c) motion is essentially the same as the standard applicable to a Rule 12(b)(6) motion. Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 470 n.2 (7th Cir. 1997).

In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiffs. See Santiago de Castro v. Morales Medina, 943 F. 2d 129, 130 (1st Cir. 1991). "Great specificity is not required to survive a Rule 12 motion. [I]t is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (quotation omitted). Accordingly, judgment on the pleadings is not appropriate unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## Background

2

George Blaisdell lived at 125 Charles Street in Rochester, New Hampshire, from 1970 until February of 1993. On February 23, 1993, the house at 125 Charles Street burned causing damage to the roof and other parts of the house. The property also included a garage where Blaisdell stored some of his personal property. Evidence of an accelerating agent was present, suggesting arson.

Before the fire, the city of Rochester disputed Blaisdell's title to the property based on the city's own tax title to the property obtained in 1985. After the fire, city officials gave Blaisdell contradictory instructions about the structural safety of the house. The city would not permit him access to the property unless he first signed an agreement in which he would acknowledge safety hazards existing on the property and release the city and all of its employees and officials from liability for any harm to him or damage to his property that might happen while he was recovering his property from 125 Charles Street. On February 25, 1993, the city used an excavator to demolish part of the house, including some of the property inside, and towed Blaisdell's pickup truck away.[1] On February 26, the city "seized" the property, and the chief of police ordered Blaisdell's arrest if he attempted to enter the property without signing the city's proposed agreement. Blaisdell filed a

_____

[1] Defendants contend that Blaisdell is bound by allegations in his abandoned pro se action, which defendants interpret as alleging that the house and his personal property were "rendered worthless" on February 25 and is barred from claiming the limited damage alleged here.

3

petition for an injunction in state court to prevent further demolition of the property.

Blaisdell was arrested on March 22 and again on the 26th, while attempting to salvage his property at 125 Charles Street, and was jailed each time, charged with criminal trespass. Blaisdell was again told that he would be allowed to enter the property if he signed the city's proposed agreement. Blaisdell did not sign the proposed agreement but instead signed a waiver of liability form in the event he was injured at the Charles Street property.

At the end of March, the city ordered the Charles Street property demolished. Negotiations on April 2 between Blaisdell and the city failed to resolve the dispute between them about the property and Blaisdell's access. Blaisdell's three motor vehicles were towed from the property, impounded at a local garage, and were never returned. The vehicles were later vandalized while being stored by the city.

The city began the final demolition of the property at 9:00 on the morning of April 5, 1993. At 1:30, on the same day, the New Hampshire Supreme Court issued a cease and desist order to the city to stop the demolition. Despite actual notice of the court's cease and desist order, the city delayed its compliance until the garage was entirely destroyed and the house was further destroyed. By April 15, when the court ordered the city to allow Blaisdell access to the property, all that was left was a pile of rubble.

On April 4, 1996, Blaisdell and his companion, who also lived at the Charles Street property, filed suit in this court against the city, city officials, and individual defendants alleging claims under 42 U.S.C.A. § 1983, 18 U.S.C.A. § 1962(a - d) ("RICO"), and state law claims arising from the circumstances surrounding the fire and demolition of the Charles Street property. The suit was begun pro se but counsel entered an appearance on their behalf on April 12, 1996. Plaintiffs voluntarily dismissed the suit on August 5, 1996, before defendants were served with the complaint. Blaisdell, represented by counsel, then filed the present action on February 21, 1997, and filed an amended complaint on May 9, 1997.

## Discussion

Defendants move to dismiss all claims as barred by the applicable statutes of limitations. Alternatively, defendants contend that some of Blaisdell's claims are not actionable as alleged and should be dismissed.


A.  **Civil Rights Claims**

Blaisdell's civil rights claims, counts I, II, IV, and V, are governed by the forum state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 275 (1985). The applicable New Hampshire statutes provide limitations periods of three years for personal injury actions. N.H. Rev. Stat. Ann. § 507-B:7 (city) and § 504:8 (individuals).

5

Accordingly, only claims that accrued within three years of the date Blaisdell filed his complaint would be timely.

Blaisdell invokes New Hampshire's "savings statute" — that allows a new action to be brought within one year of judgment entered "in an action brought within the time limited therefor" as long as the new action is not barred by judgment. N.H. Rev. Stat. Ann. § 508:10. Blaisdell's first action was timely filed on April 4, 1996; his voluntary nonsuit was entered on August 5, 1996; and his new action was filed on February 21, 1997 (within one year). Thus, claims brought in the first action that accrued after April 4, 1993, and asserted again in the present suit, are timely.[2]

Federal law controls the accrual of § 1983 claims. Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994). A § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Calero-Colon v.

---

[2] Defendants contend that Blaisdell did not plead civil rights claims in his pro se complaint sufficiently to preserve the claims through the savings statute. See Milford Quarry v. Railroad, 84 N.H. 407, 412 (1930) (new action timely only for the same claim raised in the first action). As Blaisdell referenced federal civil rights violations and cited 42 U.S.C.A. § 1983 in his first complaint, his § 1983 claims were sufficient for purposes of the savings statute, particularly when liberally construed in light of his pro se status when the complaint was filed.

Defendants mention that they were never served with the complaint in the first action, but do not present any developed argument that lack of service compromises the effect of New Hampshire's savings statute. Defendants were apparently served with copies of plaintiffs' notice of voluntary nonsuit in the first action. As it is likely that timely service is not required for application of the savings statute, see, e.g., Hoyt v. Nick, 113 N.H. 478, 480 (1973), the issue will not be addressed further.

Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995) (quotation omitted). To determine when a plaintiff has reason to know of his injury, for purposes of accrual, the court examines the particular constitutional right implicated by the most analogous common law cause of action. Id.

1.    Inverse Condemnation - Counts I and II

Blaisdell alleges that the city took his personal property and his house without just compensation in violation of his Fifth and Fourteenth Amendment rights.[3]  Blaisdell does not dispute that he was aware of the city's alleged actions against the Charles Street property from the time of the fire, when the house was damaged during the fire marshal's investigation, and at other pertinent times when the city either damaged his property or kept him from entering the property to recover items during February and March of 1993.  Thus, all of his claims based on events that occurred prior to April 5, 1993, are time barred.

Defendants further argue that Blaisdell is barred from seeking compensation from the city for any damage to his property that may have occurred after February 25, 1993, based on defendants' interpretation of Blaisdell's pro se complaint.

_____

    [3]  A plaintiff ordinarily must pursue a remedy through state law procedures for inverse condemnation before seeking redress under § 1983 in federal court.  See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-96 (1985).  Plaintiff alleges that the city did not follow the process provided by N.H. Rev. Stat. Ann. § 155-B.  As defendants have not addressed this issue, the court will not sua sponte resolve the viability of Blaisdell's inverse condemnation claims with respect to the state procedures requirement.

Defendants contend that Blaisdell alleged his property was worthless after February 25 and also that the state fire marshal, not the city, was responsible for the damage.

Allegations by a party in an abandoned pleading may be introduced as evidence of that party's admission of the fact alleged. See Sunkyong Internat'l v. Anderson Land and Livestock Co., 828 F.2d 1245, 1249 (8th Cir. 1987). The evidence of an admission is subject to the party's explanation and rebuttal evidence, however, Johnson v. Goldstein, 864 F. Supp. 490, 493 (E.D. Pa. 1994), and must be inconsistent with the party's present pleadings to be admissible, LWT, Inc. v. Childers, 19 F.3d 539, 542 (10th Cir. 1994).

The disputed paragraph from Blaisdell's pro se complaint says:

> 6. On February 25, 1993, the City and State Fire Marshalls brought in a huge excavator to purportedly "help the investigation of the fire." In fact, the excavator was used to intentionally destroy the clear evidence of arson and the same also was used to destroy and render worthless the actual structure itself, and the personal property therein, at 125 Charles Street.

Further on in the complaint, Blaisdell alleged that the city and other defendants decided on March 28 "to finish the destruction of the property, including all its valuable contents" and on April 5 "commenced the complete Demolition of the property, including all of its contents in it."

Reading the complaint favorably to Blaisdell, as is required when considering a motion to dismiss, and particularly in light of his further allegations in the complaint, the disputed passage

8

does not necessarily mean, in this context, that all of Blaisdell's property was rendered worthless on February 25. In addition, the paragraph clearly says the city and the state fire marshal brought in the excavator and does not suggest that the state alone was responsible for the destruction, as defendants contend. The paragraph may be plausibly understood to refer to future actions by the city as well as actions on February 25.

Blaisdell's § 1983 inverse condemnation claims are time barred to the extent they are based on events prior to April 5, 1993. The disputed allegations in the pro se complaint do not themselves operate to preclude Blaisdell from claiming injury and loss occurring on April 5, 1993, and after.

2.    Section 1983 Claims Against Individual Defendants —
      Count IV

Defendants contend that Blaisdell's claims against the individual defendants alleging constitutional violations based on his arrest and a conspiracy to deprive him of property without due process of law are time barred. Defendants also object that these claims are not pled with sufficient specificity to state a claim.

As explained above, claims based on events that occurred prior to April 5, 1993, are time barred. With respect to allegations of constitutional violations stemming from his arrest and imprisonment in March, his claim seems most analogous to a state common law claim of false arrest (an arrest that was patently unlawful when it occurred), rather than malicious

9

prosecution, and thus accrued at the time of the arrests in March rather than later when the arrests were determined to have been invalid. See Calero-Calon, 68 F.3d at 3-4; Guzman-Rivera, 29 F.3d at 5. Thus, Blaisdell's claims based on his arrests in March are also time barred.

Blaisdell's claims in count IV are minimally sufficient to meet the notice pleading requirements of Federal Rule of Civil Procedure 8(a) and to escape dismissal for failure to state actionable claims.

### 3. Section 1983 Claims Against the City - Count V

Blaisdell alleges that he suffered the constitutional wrongs in count IV, perpetrated by individual defendants, due to the city's custom, practice, or policy of permitting those individuals to violate his rights. Again, as above, all claims based on events that occurred before April 5, 1993, are time barred and dismissed. Blaisdell's allegations of custom, practice, or policy are, however, sufficient to state a claim of municipal liability. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993).

### B. State Law Claims

Defendants challenge Blaisdell's state law claims, alleged in counts VI through XI, on grounds that the claims are untimely or insufficiently pled to state actionable claims. Blaisdell had three years from the date of the "act or omission complained of"

to bring his state law claims. N.H. Rev. Stat. Ann. § 508:4,I.

As described above, New Hampshire's savings statute permits

Blaisdell to file a new action, for claims that were timely

brought in the first action, within a year of the voluntary

dismissal of his first suit. N.H. Rev. Stat. Ann. 508:10;

Milford Quarry, 84 N.H. at 412. Blaisdell filed his second

action within the year allowed. Accordingly, any timely state

law claims brought in the first action, filed on April 4, 1996,

are also timely in this suit.[4]

Blaisdell appears to concede that his claims of malicious

prosecution and abuse of process, not having been made in his

first suit, are now time barred. In addition, his reference in

---

[4] The parties have not addressed the question of when the first action commenced for purposes of the limitations period applicable to state law claims. Under federal law, an action commences upon filing. Fed. R. Civ. P. 3. A federal court sitting in diversity jurisdiction applies state law to determine when an action is commenced for purposes of the state statute of limitations. Walker v. Armco Steel Corp., 446 U.S. 740, 752-53 (1980). The Eighth Circuit, apparently the only jurisdiction to have considered the issue, holds that a court with federal question jurisdiction exercising supplemental jurisdiction over state law claims also looks to state law to determine the commencement date for those claims. See Appletree Square I, Ltd. v. W.R. Grace & Co., 29 F.3d 1283, 1286 (8th Cir. 1994); accord Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995). Under New Hampshire law, an action at law commences, for statute of limitations purposes, when a writ of summons is prepared and signed with a present intention to serve it on defendants. Maguire v. Merrimack Mut. Fire Ins. Co., 125 N.H. 269, 272 (1984); Hodgdon v. Beatrice D. Weeks Memorial Hospital, 122 N.H. 424, 426 (1982). Absent other evidence, the date of the writ creates a rebuttable presumption as to the date the action commenced. Desaulnier v. Manchester School District, 140 N.H. 336, 338 (1995). Given the parties' lack of attention to the issue, the court will accept the presumption that the date of Blaisdell's complaint, April 4, 1996, also the date of filing, was the date of commencement of that action for purposes of Blaisdell's state law claims.

11

his first complaint to "deprivation of civil rights" in a list of state and federal causes of action, is not sufficient to preserve the claim he now brings for an implied right of action pursuant to Part I, Article 12, of the New Hampshire Constitution. Accordingly, state law claims pled as counts VII, X, and XI are dismissed.

The remaining state law claims, conversion, intentional infliction of emotional distress, and civil conspiracy, like Blaisdell's federal civil rights claims, are limited to events that occurred within three years of the date of the first action, that is after April 4, 1993. To the extent these claims are based on events occurring before April 4, 1993, they are dismissed.

## C.   RICO Claims Count III

Civil RICO claims are governed by a four-year limitations period. Agency Holding corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 156 (1987). A civil RICO claim accrues "when a plaintiff discovered, or should have discovered, his injury" unless the time is extended by a recognized tolling doctrine. Rodriquez v. Banco Central, 917 F.2d 664, 665-66 (1st Cir. 1990); see also Klehr v. A.O. Smith Corp., 117 S. Ct. 1984, 1989 (1997). New Hampshire's savings statute is inapplicable to plaintiff's RICO cause of action, which does not involve New Hampshire's statute of limitations.

12

Plaintiff's complaint was filed on February 21, 1997, commencing the present action on that day.[6] <u>See</u> Fed. R. Civ. P. 3. The first event alleged in the complaint was the house fire at 125 Charles Street on February 21, 1993, although it is not clear that plaintiff's civil RICO claim includes allegations about the occurrence of the fire. The other alleged actions by defendants occurred after that time. Thus, all actions alleged after February 21, 1993, are within the four year limitations period allowed for civil RICO actions. The RICO claim is timely.

Defendants also argue that civil RICO actions, such as plaintiff's claim here, should not lie if state common law remedies exist for the same injuries. Defendants' suggestion of a judicial amendment to the RICO statute is contrary to the current trend. <u>See, generally</u>, <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 498-500 (1985); <u>Roma Construction Co. v. aRusso</u>, 96 F.3d 566, 571 (1st Cir. 1996); <u>Rose v. Bartle</u>, 871 F.2d 331, 356 (3d Cir. 1989). Defendants' motion to dismiss the RICO claim is denied.

D.    **<u>Plaintiff's Motion for Partial Summary Judgment</u>**

Blaisdell moves for summary judgment in his favor on his claims in Counts I and X of his complaint. Although defendants have not yet filed their objection, and time has not expired for

---

[6] The court does not understand defendants' argument that plaintiff had until February 24, 1997, to commence this action within the limitation period and failed to do so.

them to do so, the present order sufficiently changes the nature of Blaisdell's claims and his motion for summary judgment to require early disposition.

Count X, alleging an implied cause of action based on the New Hampshire Constitution, is dismissed in this order. Accordingly, plaintiff's motion for summary judgment in his favor on count X is denied.

Summary judgment is appropriate when properly submitted materials on file show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the party moving for summary judgment and the party bearing the burden of proof at trial, to prevail on a motion for summary judgment, Blaisdell must be able to demonstrate uncontested material facts in support of his claim sufficient to convince the court that no reasonable jury could find against him. See Fed. R. Civ. P. 56(c); Lopez v. Corporacion Azu Carera de Puerto Rico, 938 F.2d 1510, 1516-17 (1st Cir. 1991).

Count I, alleging that the city violated Blaisdell's federal constitutional rights by taking his property without just compensation, has been limited by this order to events occurring on or after April 5, 1993. Defendants dispute whether any property remained to be taken by April 5, 1993, based in part on admissions contained in Blaisdell's first complaint. In addition, it is not clear on the present record that Blaisdell has satisfied the state procedures requirement necessary to

14

maintain a federal "taking" claim. <u>See</u> <u>Williamson County Regional Planning Commission</u>, 473 U.S. at 196-200. Accordingly, as plaintiff has not demonstrated undisputed material facts entitling him to judgment as a matter of law, summary judgment is not appropriate on the present record, and is denied.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss (document no. 19) is granted in part and denied in part. Plaintiff's motion for summary judgment (document no. 40) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 28, 1998

cc:  Matthew Cobb, Esq.
     Donald E. Gardner, Esq.